PEOPLE'S FIRE INSURANCE ASSOCIATION OF ARKANSAS *v.* GOYNE.

(Three cases.)

Opinion delivered June 11, 1906.

1.  INSURANCE—ESTOPPEL BY ACT OF AGENT.—An insurance company may be estopped by the conduct of its agent, acting within the apparent scope of his authority, from availing itself of a false answer to a material question or of any other breach of warranty or violation of the provisions of the application or policy, notwithstanding clauses in the application or policy provide that it shall not be bound by any such conduct of its agent.   (Page 322.)

2.  SAME—PAROL EVIDENCE OF WAIVER.—Parol evidence is admissible to show that an insurance agent, in writing the application for a policy, waived a forfeiture on account of a false answer to a material question or a violation of provisions of the application or policy, in the face of clauses in the application or policy to the effect that no waiver shall be effective unless indorsed in writing on the policy at the office of the company.   (Page 322.)

Appeals from Ashley Circuit Court; *Zachariah T. Wood,* Judge.   Three suits were brought against the appellant by Goyne, by Bird and by Freeland & Bro.   Recoveries were had in each suit by the plaintiffs, and the insurance association appealed. The cases were submitted together.   Affirmed.

STATEMENT BY THE COURT.

There was a jury trial in Goyne's case, resulting in verdict and judgment for him against the insurance company in the sum of $1,018.24.   Bird's case and Freeland's case were tried before the court sitting as a jury by consent, and resulted in judgment

for $1,044.40 and $569 respectively. The insurance company appeals, and this is its statement of facts:

These three actions are based upon three policies of insurance issued by the appellant on the 14th day of December, 1903. The applications for the policies were taken by the same agent of appellant, were made by the respective appellees on the same day upon property alleged to be situated in the same town, and the losses claimed to have been sustained were caused by the same fire, which occurred on the 10th day of January, 1904. The facts and principles of law involved are, practically, the same in each case. Hence counsel have agreed to submit them together.

In Goyne's case, No. 5902, the appellant denied liability because, it alleged, the policy was obtained by fraud and misrepresentation and concealment of a material fact on the part of appellee, in this, that in his application for the insurance, which, by the terms and conditions of the policy, formed a part of the contract of insurance, he represented that there was no building nearer to his store building, upon which he desired insurance, than 90 feet, when, in fact, there was another building less than ten feet therefrom, thereby largely increasing the risk assumed by appellant without its knowledge or consent, either at the time of issuing the policy or at any time previous to the fire.

In Bird's case, No. 5903, the complaint stated that appellee was the owner of lot 3, in block 11, in the town of White, Ashley County, together with a one-story frame building situated thereon and occupied as a store, and that this building and a stock of goods, etc., located and being therein, were insured by appellant. The policy of insurance issued by appellant was filed with and made part of· the complaint. In its answer appellant denied that appellee was the owner of said lot and building. It admitted the issuance of the policy upon the building and goods described in the complaint and their loss by fire, but denied liability, because, it alleged, said policy was obtained by fraud and misrepresentation and concealment of material facts, in this, that appellee, in his application for the insurance, which was, by the terms and conditions of the policy, a part of the contract of insurance, represented that there was no building nearer to his said store building than 30 feet, when, in fact, there was another building less than 20 feet therefrom, thereby largely increasing

the risk assumed by appellant without its knowledge or consent, either at the time of issuing the policy or at any time previous to the fire; and in this, that appellee was a United States postmaster, and kept the postoffice in said building at the time of making his said application, which fact largely increased the risk, and was concealed from and unknown by appellant until after the fire.

In Freeland's case, No. 5904, the complaint alleged ownership by appellees of lot 7, in block H, together with household and kitchen furniture contained in said building. The policy was made part of the complaint. In its answer appellant denied that appellees were the owners of said lot and building. It admitted the issuance of the policy, but denied liability because it alleged that it was obtained by fraud and misrepresentation and concealment of material facts by appellees, in this, that in their application for insurance, which, by the terms and conditions of the policy, was a part of the contract of insurance, the appellees represented that there was no building within 100 feet of the building to be insured, when, in fact, there was another building less than ten feet therefrom, thereby largely increasing the risk assumed without the knowledge or consent of appellant, either at the time of issuing the policy or at any time previous to the fire; and in this, that in said application appellees represented that the building was occupied as a private boarding house, when, in fact, it was occupied and used as a public hotel or tavern, by reason of which the risk assumed was largely increased without its knowledge or consent at any time; and in this, that in said application appellees represented that said building was occupied as a private boarding house, when, in fact, it was also used as a general store for the sale of merchandise, and at that time contained some $1,500 worth of merchandise, and was also used as a barber shop, all under one roof and described in said application as one building, thereby increasing the risk assumed without the knowledge or consent of appellant at any time.

In each case, both in the pleadings and the proof, it was shown and admitted that, as soon as appellant ascertained the facts set out in its answers, it denied its liability and returned the premiums received by it, which were refused by each of the appellees, and in its answers again tendered them.

Goyne's title to the property insured was not put in issue, but Bird's and Freeland & Bro.'s were. The proof showed that neither Bird nor Freeland & Bro. were the owners of the land or lots upon which the insured buildings were located. In Bird's case the policy insured a building on lot 3, block 11, in the town of White, and certain goods while contained therein. The proof showed that all the land owned by Bird was lot 10 in Block E in the town of White. In Freeland & Bro.'s case, the policy insured a private dwelling house and contents situated on lot 7 in block H, in the town of White. The proof showed that all the land they owned was an indefinitely described lot 9 in block G, and an indefinitely described lot 8 in block G, in Ashley County, Arkansas, and that the building thereon was a public hotel or tavern, and not a dwelling house, nor a private boarding house. These facts are not disputed anywhere in the record. In fact, each allegation of each answer in the three cases was clearly proved, and is not disputed, but appellees rely wholly upon the fact that appellant's agent was present, saw the property, examined the deeds, and made out the applications for insurance, and that, therefore, appellant is bound by his knowledge or his means for having knowledge. They testified, with perfect uniformity, that this agent was an entire stranger to them, and that they did not read, nor hear read, nor ask to have read, either of the applications, but signed them upon this agent's assurance that they were all right, at the same time admitting that they knew that they could not get the insurance unless they signed the applications. H. J. Freeland said that he could not read nor write, but that his brother, who was his partner, could do both, and that he signed their application. This agent was only authorized to solicit and forward applications for insurance and collect the premiums therefor. He could not issue policies, nor did he make any pretense of being a general agent. The applications exhibited with the answers and introduced as evidence clearly state that the company shall not be held liable for any loss or damage, or for any insurance until they were received and approved at the home office in Little Rock, Arkansas. Appellees also testified that this agent asked them no questions, and that they made no answers, but simply trusted the whole matter to him, and did not even see him make out the applications.

The above and foregoing statement fairly presents the facts. In addition thereto, it may be added that it was shown, without dispute, that each matter relied upon as avoiding the policy was well known to the agent. In Goyne's case the agent was shown the building nearest to the house where the property insured was located, was fully informed of the facts, and wrote the application containing the misstatement. The same was true in Bird's case in regard to the location, and the agent knew Bird was postmaster and kept the postoffice in his store, and he (the agent) received mail at it; the same facts as to location existed in Freeland's case, and as to the representation of the building being used as a private boarding house, when in fact it was a hotel, the agent stopped at the house for several days, slept in the best room and on the only feather bed, and knew the facts concerning the character of the house as well as the owner. In regard to the description of the lots in Bird's and Freeland's cases, the property was all either of them owned in the place, was pointed out to the agent, and he was given the deeds to write in the proper description. It seems that this was a new town, and a recent plat had been made, and descriptions were uncertain, probably not in conformity to the new plat. The agent wrote all the applications on information given him. No false answers were made to him. None of the insured read over the applications. They signed them without reading them. All had opportunity to read them.

The following clauses in the applications and policies are material to the issues presented:

"This application shall be considered a part of the contract for insurance and a warranty by the applicant, and it is further understood and agreed that this association will not be bound by any representations of the applicant or promise of the agent or solicitor not contained herein; and I further agree that the answers to all questions are my own, or by my express authority.

"I warrant the foregoing application to contain a full and true description and statement of the condition, situation, value, occupation and title of the property proposed to be insured in the People's Fire Insurance Association of Arkansas, and I warrant the answer to each of the foregoing questions to be true, full,

complete and correct, and the same shall be a part of my policy of insurance in said association."

This application is signed by appellee. Across the face of the application, in red ink, is the following:

"Notice to applicant: This association will not be bound or held liable for any insurance this application calls for until this application is received and approved by the association at its home office at Little Rock, Ark."

In the body of the policy are the following terms and conditions: "This entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the assured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

Below the numbered lines are the following terms and conditions:

"Special reference is had to insured's application, which is his warranty, and is the basis upon which this policy is issued, and is made a part of this contract.

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto at the home office, and no officer, agent or other representative of this association shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisional conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

*Daniel W. Jones* and *J. H. Hamiter,* for appellant.

1. If a policy describes one building, no external evidence is admissible to show that another was meant, even though the description was a mistake of the agent, he being only authorized

to make surveys and receive applications, the company approving the risks.   1 May on Ins. § § 144f, 277, 278; 115 N. Y. 279.

2.   In each case the contract was entire and indivisible.   If void as to part of the property insured, it was void as to all.   63 Ark. 202.

3.   Although the knowledge of the agent, or notice to him, of the inaccuracy of the statement in an application upon which a policy of insurance is issued after such knowledge or notice, binds the insurance company, and prevents it from availing itself of the inaccuracy in defense, yet, if the agent be guilty of fraud upon the company, and the person knowingly aids in its perpetration, or, by neglecting to read the application, suffers it to be perpetrated, a policy obtained by him under such circumstances is void.   1 May on Ins. § 144g, 280; *Ib.* § 288; 41 Conn. 168; 58 Ark. 528; 117 U. S. 519; 74 Mo. 167; 46 Me. 394; 58 Ark. 277; 52 Mo. App. 94; 72 Ark. 484.

*Geo. W. Norman,* for appellee Bird.

The agent was present, and knew the situation of the building as to its proximity to other buildings, and of the fact that a U. S. postoffice was maintained therein.   He examined the deed, and wrote up the application, himself filling in the answers to the questions and the description of the property.   The company is bound by his knowledge.   The court's declaration of law is fully sustained by this court.   52 Ark. 11; 71 Ark. 242; 53 Ark. 215; 52 S. W. 862; 41 S. W. 519.   The doctrine of waiver applies to warranties as well as false representations.   60 S. W. 576; 51 *Ib.* 617; *Ib.* 755; 50 *Ib.* 545; 57 S. W. 456; 65 Ark. 581; *Ib.* 337; 64 Ark. 245.

*R. E. Craig* and *Pugh & Wiley,* for appellees Goyne and Freeland & Bro.

1.   As to appellee Goyne: If there is any distinction to be drawn between this and the Brodie case, 52 Ark. 11, the difference, if any, is in favor of appellee.   In this case, the answer was written by the agent, and the *question was not put to appellee* at all for answer.

2.   As to appellee Freeland: On the question of exposures, occupation and description of property, practically the same conditions exist as in the Bird case, and the same argument and authorities apply.   As to the description, the deeds, the application

and the policy all referred to the same property.  It would make little difference as to the description, if it could be definitely ascertained what property was intended.  It was not necessary to bring suit in equity to reform the policy.  6 L. R. A. 524; 65 Iowa, 308; 11 Kan. 533; 48 Tex. 622; 90 S. W. 284.

3.  The rule that the knowledge of an insurance agent is imputable to the company applies also, in most instances, to a soliciting agent with reference to matters made known to him prior to the execution of the policy.  3 Cooley's Ins. Briefs, 2524.  When the application is filled out by the agent from his own knowledge without seeking information from the insured, and the latter signs the application without reading it, relying on the agent's good faith and assumption of knowledge, the insured can not be called on to bear the consequences of false statements in the application.  *Ib.* 2558; 125 Ill. 361; 121 *Ind.* 524; *Ib.* 570; 16 Wis. 257.  In this case, the facts relied on to avoid the policy are admitted to have been known to the agent before forwarding the application.  The company is estopped.  74 Fed. 114; 74 Am. St. Rep. 769; 70 S. W. 603; 7 Am. St. Rep. 557; 45 N. W. 792.

HILL, C. J., (after stating the facts.)  These are the questions involved in these cases:

May an insurance company be estopped by the conduct of its agent, acting within the apparent scope of his authority, from availing itself of a false answer to a material question or other breach of warranty or violation of the provisions of the application or policy, notwithstanding clauses in the application or policy to the effect that the company shall not be bound by any such conduct or representation of its agent?  And if such estoppel is available, may it be proved by parol evidence, in the face of clauses in the policy or application to the effect that no waiver shall be effective unless indorsed in writing on the policy at the home office of the companay?

The leading case for many years upon the subject was the case of *Insurance Co.* v. *Wilkinson,* 13 Wallace, 222.  The opinion was delivered by Mr. Justice Miller, and concurred in by the entire court.  Mr. Justice Miller said:

"If, however, we suppose the party making the insurance to have been an individual, and to have been present when the ap-

plication was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations, and was told by the plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet, knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement would be an act of bad faith and of the grossest injustice and dishonesty. And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract; and that it was made by the defendant, who procured the plaintiff's signature thereto.

"It is in precisely such cases as this that courts of law in modern times have introduced the doctrine of equitable estoppels, or, as it sometimes called, estoppels *in pais.* The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood, and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim. It has been applied to the precise class of cases of the one before us in numerous well-considered judgments by the courts of this country."

In *Insurance Co.* v. *Brodie,* 52 Ark. 11, this court followed *Insurance Company* v. *Wilkinson,* and quoted largely from the opinion. After quoting from this opinion, the court proceeded to review the authorities of other courts upon the subject, and concluded that the insurance company was estopped from taking advantage of the falsity of an answer where its agent knew it was false, and had notice of the falsity at the time it was made; and the court further said in that case, and cited to support it many authorities, that the waiver may be proved by either written or oral evidence, notwithstanding the declaration in the policy to the contrary. If this case is followed, there could be no question

but what the judgments in these cases should be affirmed, for in principle the answers are of exactly the same character as in the Brodie case.

The Supreme Court of the United States in *Northern Assurance Company* v. *Grand View Bldg. Assn.*, 183 U. S. 308, has decided these questions otherwise. Mr. Justice Shiras delivered the opinion of the court, and the case of *Insurance Co.* v. *Wilkinson* and the other cases is the Supreme Court of the United States along the same line were "distinguished" in name, but in fact were overruled, and the Wilkinson case was almost in terms overruled; part of its language was disapproved, without designating which part went under the ban. The fact that the Supreme Court of the United States has decided differently from this court upon a question of general law calls for a careful examination of the question in order to see if error has been committed, and, if possible, to obtain uniformity of decision upon important questions constantly arising in both Federal and State courts. After a review of the authorities, Mr. Justice Shiras stated the position of the court as follows:

"They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and can not by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies that such a policy shall be void and of no effect if other insurance is placed on the property in other companies, without the knowledge and consent of the company, are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by indorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited

grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by non-observance of such conditions; that where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

This position does not commend itself as sound in principle. Insurance contracts are not, as a rule, made like other contracts. They are prepared by one party to the contract, and the other party thereto has no opportunity to deal with his contractor as to the terms, conditions and limitations of the contract. The only option open to him is to contract or not to contract; and when he contracts, it is upon terms prepared in advance by the other party, and reduced to printed form which is sought to be as unchangeable as the laws of the Medes and Persians.

To procure these contracts of insurance, agents are sent forth whose duties are limited to procuring insurance, and various clauses are inserted in the policies and in the applications therefor disabling the agent from binding the company in any manner not stipulated in the policy. Can one party to a contract thus prevent himself being bound by the ordinary principles governing principal and agent? If a man sends forth an agent and clothes him with authority to do certain acts, his acts within the scope of that authority are binding upon the principal; and moreover if he clothes him with apparent authority to do certain acts, and privately instructs him to the contrary, and the agent proceeds to do those acts within the apparent scope of his authority, but contrary to his private instructions, still the principal is bound. When an agent does anything within the real or apparent scope of his authority, it is as much the act of the principal as if done by the principal himself. These are fundamental doctrines in the law of principal and agent, and have been applied in every court where the common law prevails.

When a person does an act or makes a representation which leads another person to a certain course of conduct which he would not otherwise have pursued, the party causing this action is estopped to take advantage of anything contrary in fact to his misleading conduct or representation. Courts of law, as well as of equity, apply the doctrine of equitable estoppel or estoppel *in pais.* As was stated by Mr. Justice Miller in the Wilkinson case, and the cases cited in the footnote thereto, that principle prevails generally. The application of these familiar doctrines of agency and estoppel to insurance contracts and insurance agents necessarily sustains the decision in the Wilkinson case and in the Brodie case. It will not do to say that an agent can go forth clothed on the one hand with authority for insuring and on the other hand is disabled from binding the company in regard to the insurance which he is procuring. The scope of his authority is to obtain that insurance, and for that purpose he is furnished with applications and usually with policies. His business is to have those applications filled out truthfully, to the end that an insurance contract or policy be obtained by the applicant. If the company clothes him with that power, it is necessarily bound by his action in performing that power. If he has sufficient power to obtain benefits for his company in this particular matter, he has power to impose liability upon the company in the very manner in which he is entrusted with the power. The power to act for the company in a particular case gives the power to bind in that self-same instance. One can not be dissociated from the other.

In *Fidelity Mutual Life Ins. Co.* v. *Bussell,* 75 Ark. 25, it was pointed out that this court had always confined the waiver by an agent to an act within the scope of the authority conferred, and to a matter which could be waived, and the decisions in this court to that effect are therein cited. Therefore these decisions, each in its own way, serve to sustain the principle of the Brodie case, and is antagonistic to this new doctrine in the Supreme Court of the United States.

Can such an estoppel or waiver be proved by parol? The courts excluding the estoppels and waivers do so upon the rule against varying and contradicting a written contract by parol, as well as upon sustaining the contractual right to exclude such

estoppels and waivers. No court has been found which holds the estoppel or waiver available which excludes parol evidence to prove it. Some rest the admission upon the theory of fraud or mistake, to prove which parol evidence is always admissible; others rest it upon the theory that an estoppel against the contract or a waiver of its terms is not varying or contradicting the written instrument. In the one instance the writing can not be asserted, and in the other it is no longer in force because abrogated by the waiver.

The court is convinced that the reasoning in *Northern Assurance Co. v. Bldg. Association* is not sound, and should not be followed, and that the Brodie case, following the Wilkinson case, states the true rule in such matters. The court is reinforced in that opinion by the decisions of many other courts on the same subject since the decision of *Northern Assurance Co. v. Building Assn.*

In *Thompson v. Traders Ins. Co.,* 169 Mo. 124, the Supreme Court of Missouri said:

"But the defendant relies upon the case of *Northern Assurance Co. v. Grand View Building Assn.,* decided by the Supreme Court of the United States on January 6, 1902, and reported in *22* S. C. Rep. 133, and upon a number of like cases in other jurisdictions, and upon the authority of those decisions contends that the Missouri rule is wrong, because every principal—insurance company as well as individual—has a right to limit the power and authority of his agent, and is not bound by any act of the agent in excess of his power.

"With every possible respect for the courts whose decisions are cited, and, also, for the learning of the able counsel for the defendant in this case, it is only necessary to say that the Missouri rule does not impair the power of a principal to limit the authority of his agent, nor does it bind the principal for the acts of the agent done in excess of the power conferred on the agent. On the contrary, it holds the principal liable just as far, and no further, as he has made himself responsible. It measures the responsibility of the principal for the acts of the agent, not alone by the terms of the original power conferred on the agent, but also by the subsequent power, written or parol, expressly conferred, or such as is necessarily implied from the conduct of the

principal, and of his agent with his knowledge, and from their course of business with third persons, and which conduct and course of business estop the principal from denying the power of the agent to do the particular act relied on, albeit the power to do that act was not conferred, but, on the contrary, was expressly denied to the agent by the original contract.

"In other words, the Missouri cases give full effect to the contractual power of the principal to limit the authority of his agent in the original appointment or at any other time, but those cases also give like effect to all subsequent powers conferred by the principal upon his agent, either expressly, or by implication, or by estoppel, notwithstanding such powers are in conflict with, in derogation of, or in enlargement of, the powers originally conferred. And this rests upon the doctrine that in each instance the principal binds himself—not that the agent binds the principal beyond his power to bind him. The act of the principal limiting the power of the agent is not irrevocable at the will of the principal. As the principal has the freedom to contract to impose the limitations upon the power and authority of the agent in the first place, so also the principal has the freedom to contract to remove, abolish, alter, diminish or increase the limitatitons originally imposed upon the power of the agent, and this the principal may do in any manner that in law will be binding upon him, but in every case it is the act of the principal that the law simply enforces, and not the unauthorized act of an agent done in excess of the authority conferred. The cases relied on by defendant fail to compel conviction or to be accepted as authority in other jurisdictions, because they lose sight of these fundamental principles of law." 169 Mo. 24.

The Supreme Court of Appeals of Virginia in *Virginia F. & M. Ins. Co.* v. *Richmond Mica Co.,* 46 S. E. 462, said:

"Much reliance has been placed by counsel for the plaintiff in error upon the opinion of Mr. Justice Shiras in the case of *Northern Assurance Company* v. *Grand View Bldg. Assn.,* 183 U. S. 308, 22 S. Ct. Rep. 133, 46 L. Ed. 214, reversing the judgment of the Circuit Court of Appeals of the Eighth Circuit. While the pronouncements of that great court must always command the highest respect, its judgment in the particular case is deprived of much value as a precedent by the circumstance that

it is not in harmony with many former decisions of that court, and that the Chief Justice, Mr. Justice Harlan, and Mr. Justice Peckham did not concur in the opinion of the majority. Since that decision was rendered, Mr. Justice Shiras has retired from the bench, and been succeeded by Mr. Justice Day, who presided in the Circuit Court of Appeals in the case of *Queen Ins. Co.* v. *Union Bank & Trust Co.,* 111 Fed. 699, 49 C. C. A. 555, where a different conclusion was reached. So there are now on that bench at least four justices who entertain views opposed to those of the majority, as expressed in the case referred to. In this state of the law, this court can hardly be expected to abandon its own well-considered precedents to follow the questionable ruling of another tribunal."

The Court of Appeals of Kentucky in *German-American Ins. Co.* v. *Yellow Poplar Lumber Co.,* 84 S. W. 551, said:

"The fact that the contract provides that no subsequent agreement shall be valid unless in writing and indorsed on the policy does not change the rule, for this part of the contract stands like any other part of it, and may be changed by a subsequent parol agreement, just as any other provision of the contract may be subsequently modified. This rule is supported by the previous cases referred to, and by the decisions of a majority of the States, Appellant relies very strenuously upon an opinion of the Supreme Court of the United States—the case of *Northern Ins. Co.* v. *Grand View, etc., Assn.,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213. Deference and great respect is always due this exalted tribunal, but in this case it should be borne in mind that the Supreme Court was not construing a provision of the Constitution of the United States, an act of Congress, a treaty, or giving an exposition of law upon which its judgment would be final and conclusive here and elsewhere. The court was dealing with a question of general jurisdiction, upon which it was privileged, as this court is privileged, to exercise an independent judgment. It is no new thing for this court and the honorable Supreme Court to be in disagreement upon questions of general law. To review the long line of authorities in Kentucky, and bring them in accord with the conclusion reached by the Supreme Court of the United States in the case quoted above, would be to confess previous inability of this court to make and declare the law gov-

erning the rights and responsibilities of insurance companies and their patrons in this State."

The Supreme Court of Illinois in *Orient Ins. Co.* v. *Mc-Knight,* 64 N. E. 339, said:

"Counsel for appellant have referred to cases holding otherwise, including *Northern Assurance Co.* v. *Grand View Bldg. Assn.* (decided by the Supreme Court of the United States, at its October term, 1901, by a divided court), 22 Sup. Ct. 133, 46 L. Ed. 213; but we have adopted a different rule in this State, and it must be applied in this case."

The Appellate Division of the Supreme Court of New York pursued a like course in *Benjamin* v. *Ins. Co.,* 80 N. Y. Sup. 256, but that was not the court of last resort, and hence was not at liberty to change the rule if desired; the same is true of the Civil Court of Appeals in Texas in *Home Mut. Ins. Co.* v. *Nichols,* 72 S. W. 440.

More notable than any of these cases is the case of *Grand View Bldg. Assn.* v. *Northern Assurance Co.,* in the Supreme Court of Nebraska, being the same case decided by the Supreme Court of the United States, in the 183 U. S. heretofore referred to, which was brought in the form of a chancery proceeding, after the Supreme Court of the United States had decided in favor of the insurance company. The Nebraska Court, in 102 N. W. 246, said:

"From the final decision in the former action, four out of the nine judges of the United States Supreme Court dissented. The opinion of the majority, being the adherence to the letter of an antiquated and worn-out technical formality, seems to us to be an ironical commentary upon the often-repeated judicial boast that the law is a progressive science, and that the courts are continually adapting their processes and proceedings to changing social business needs and customs. Either so, or else, as we consider, the court fell into a still more grievous error. The familiar maxim that equity regards that as having been done which was agreed to and ought in good conscience to have been done, has not for a long time been a stranger in courts of law in cases in which equitable matters are properly in issue."

Mr. Robert J. Brennan wrote a review of this Nebraska case in 60 Cent. Law Journal, 464.

The Supreme Court of Appeals of West Virginia in *Maupin* v. *Ins. Co.,* 53 W. Va. 557, followed the Northern Assurance case. Judge Poffenbarger filed a dissenting opinion, reviewing at great length the Northern Assurance case and disagreeing with it. Fifteen months later the same question came before the court again in *Medley* v. *Ins. Co.,* 55 W. Va. 344. Judge Poffenbarger wrote the opinion this time, and had secured two of his brethren to agree with him, and the former decision was overruled, two of the judges dissenting. A somewhat careful investigation fails to discover any decision following the Northern Assurance case except the Federal and Territorial courts which are concluded by it, save only West Virginia, and, as stated, it quickly receded from that position.

One of the best discussions of this question is to be found in *Sternaman* v. *Met. Life Ins. Co.,* 170 N. Y. 13, decided in the month following the decision in Northern Assurance case, but evidently without having seen that decision. The majority of the court reached the same conclusion as did this court in the Brodie case.. The minority opinion was written by Chief Judge Alton B. Parker. The two theories are well presented in that case.

Mr. Ashley Cockrill, in an interesting and instructive address before the Arkansas Bar Association at its 1905 session (page 62), reviewed the history of *Northern Assurance Co.* v. *Bldg. Assn.,* and strongly supported it. His address furnishes a careful survey of the decisions on this question before and after the rendition of this decision, and his investigation has lightened the labor of this examination of the cases.

In addition to the cases heretofore cited, which have not followed the decision of the Supreme Court of the United States, and which have been decided since that decision, are the following, all of which sustain the position here taken. Most of these cases are found in Mr. Cockrill's article, but some are more recent: *Fire Assn.* v. *Yeagley,* 72 N. E. 1035; *Vesey* v. *Com. Union Assn. Co.,* 101 N. W. 1074; *Fire Assn.* v. *Masterson,* 83 S. W. 49; *Nute* v. *Hartford Fire Ins. Co.,* 83 S. W. 83; *Continental Ins. Co.* v. *Thomasson,* 84 S. W. 546; *Madden* v. *Phoenix Ins. Co.,* 70 S. C. 295; *Foster* v. *Ins. Assn.,* 79 Pac. 798; *Ohio Farmers' Ins. Co.* v. *Vogel,* 73 N. E. 612; *Johnson* v. *Aetna Fire Ins. Co.,* 51 S. E. 339; *Reilly* v. *Empire Life Ins. Co.,* 90

N. Y. Sup. 866; *German-American Ins. Co.* v. *Yeagley,* 71 N. E. 897.

In the cases of *Spalding* v. *New Hampshire Fire Ins. Co.,* 52 Atl. Rep. 858, the authorities upon this subject are fully reviewed, and it is there shown that the great weight of the American authority sustains the position taken by this court; and since that time many more decisions have been rendered upon the same side of the question.

It is unfortunate that the Supreme Court of the United States should take this departure. It puts in force a different rule on the same subject in Federal courts than is in force in the great majority of the State courts, and such a condition is to be regretted. But to avoid this situation it can not be expected that the State courts should abandon their own decisions, which were frequently bottomed upon the doctrine announced from an undivided court in the opinion written by that great jurist, Mr. Justice Miller, in the Wilkinson case, and change because that court has changed. Especially reluctant should the State courts be to do so where, as in this State, the other doctrine has become woven into the jurisprudence of the State, and should not be changed except for the weightiest reasons.

The law must adjust itself to new conditions arising in the commercial and industrial growth of the country, and the flexibility of the common law has always been one of its sources of strength. It became the duty of the courts to adjust and adapt to these new questions arising from a new method of contracting and conducting affairs the elemental principles governing the subject-matter so as to effect justice and to prevent the rules of law becoming engines of oppression or injustice. The adaptation of the doctrine of estoppel and the usual rules applicable to principal and agent to these insurance contracts was meeting with elemental principles the exigencies of the case. To deny application to them after being so long in force in both Federal and State courts is a retrogression which this court declines to make.

The judgments are affirmed.

Mr. Justice McCulloch not participating.