SOUTHERN INSURANCE COMPANY v. FLOYD.

Opinion delivered June 13, 1927.

1. INSURANCE—JURY QUESTION.—In an action on a policy of life insurance, evidence *held* to raise the question for the jury whether insured had tuberculosis at the time of his application, in which he made the statement that he had never had tuberculosis.

2. EVIDENCE—HEARSAY—PRIVILEGED MATTER.—In an action on a life insurance policy in which the insurer contended that insured had tuberculosis at the time of the application and affidavit of deceased doctor, who attended insured in his last illness, that he

treated insured for tuberculosis prior to application, was inadmissible both as being privileged matter and as matter of hearsay.

3.  INSURANCE—KNOWLEDGE OF AGENT.—Knowledge relating to the physical condition of the insured which comes to the agent of the insurance company, while he is performing the duties of his agency in receiving applications for insurance and. delivering policies, becomes the knowledge of the company, and the insurance company is bound thereby, in spite of a provision in the policy to the contrary, where the agent who solicited the business was charged with the duty of asking the applicant questions concerning his physical condition.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

*John L. Crank,* for appellant.

*George G. Stockard,* for appellee.

SMITH, J.   Appellant insurance company issued a policy of insurance to W. M. Floyd, payable to his wife, for the sum of $100, and increasing $20 per month until a maximum of $1,000 was reached.   The insured died August 5, 1925, and the policy at that time, if valid, was worth $580, and the beneficiary brought suit for that amount, together with penalty and attorney's fee.   The policy was written July 8, 1923, and the insured was not required to submit to a medical examination to obtain it.   He was required, however, to make an application in which numerous questions were asked concerning the existing and previous condition of his health.

The question was asked:   "Give the name and address of doctor last consulted and date," to which question the applicant answered:   "Doctor Downey, of Cecil, Arkansas—9 years ago."

Certain diseases were specifically inquired about, one of these being rheumatism, and the applicant answered: "I had one attack of rheumatism about 6 years ago."

The application contained the question:   "Have you ever had any disease of the following organs: lungs—tuberculosis?" and to each of these questions the applicant answered:   "No."

After answering the various questions asked, the applicant signed the following statement:

"It is hereby understood and agreed that each and all of the foregoing statements and answers were made by me to obtain a policy of insurance in the Southern Mutual Life Association, and in consideration of the reduced rate of the policy which may be issued me hereon, and the fact that no medical examination is required, the Southern Mutual Life Association, relying solely on my statements and answers to questions contained herein for information as to my eligibility, I do hereby warrant and declare said answers and statements to be absolutely full, true and complete. It is hereby covenanted, declared and agreed that all statements answers and provisions contained in this application shall, together with the by-laws governing said association (now in force or which may hereafter be adopted) be the basis of and form a part of the contract between the applicant and said association, and the policy which may be issued upon this application shall be accepted by said applicant upon the express condition that, if any statements or answers in said application are untrue or are in violation of any term or condition or covenant of said policy or by-laws (now in force or which may hereafter be adopted), then said policy shall be null and void, and all benefits thereunder shall be forfeited."

The testimony shows that the insured died of tuberculosis on the 5th day of August, 1925, and it is insisted by the insurance company that the insured was suffering from that disease at the time the policy was issued, and that this condition constituted a breach of the warranty to the contrary, which invalidated the policy. It is also insisted by the insurance company that the applicant falsely stated that the last physician consulted by him was Dr. Downey, nine years prior to the date of the application, whereas the insured had consulted and been treated by Dr. Hill, of Mulberry, Arkansas, six years before the date of the application.

The court gave, at appellant's request, an instruction which told the jury that the answers contained in the

application were warranties, and that, if the answers were false, there could be no recovery on the policy sued on, but appellant insists that, under the undisputed testimony, a verdict should have been directed in its favor, for the reason that the insured had tuberculosis at the time of his application, and made a false statement as to the date when he had last consulted a physician.

The following testimony was offered tending to show that the insured had tuberculosis at the date of his application: The father of the insured made an affidavit to that effect, but, when called as a witness by appellant, he repudiated the affidavit and testified that he could not read or write, and that the affidavit had not been read over to him, and that he did not state that his son, the insured, had tuberculosis. An attempt was made to offer in evidence an affidavit made by Dr. Hill, who attended the insured in his last illness. In Dr. Hill's affidavit he stated that he had treated the insured for tuberculosis in 1920 and 1922, which was prior to the application for the policy. Dr. Hill was dead at the time of the trial, and an objection was sustained to the introduction of his affidavit upon the ground that the matter was privileged and that the affidavit was hearsay. There was no error in this ruling. This affidavit was not a deposition, and was properly excluded by the court.

Dr. J. E. Johnson, a physician in charge of a hospital devoted to the treatment of tuberculosis in Fort Smith, testified that he treated the insured for tuberculosis in June, 1924, and that the case was then chronic. This, however, was practically a year after the date of the application, and Dr. J. B. Trice, who was called as a witness for appellee, testified that the disease of tuberculosis could become chronic in that time.

A. B. Henderson, a druggist, testified that, in the fall and winter of 1921 and 1922, the insured was about five feet eight inches tall, weighed only about 135 pounds, and was stoop-shouldered and thin-chested and had a

sallow complexion, and that he saw Dr. Hill give the insured a medicine which was used in the treatment of tuberculosis. The witness could not state, however, that the medicine had been prescribed for the insured himself.

We cannot say that the jury must necessarily have found from this testimony that the insured had tuberculosis at the date of his application.

In the very recent case of *Modern Woodmen of America* v. *Whittaker,* 173 Ark. 921, 293 S. W. 1045, it was held that the statement of an applicant for insurance, which was made a warranty by the provisions of the application, that he was in good health, should be construed as meaning only that the insured believed himself to be in good health.

It is also insisted for the reversal of the judgment in the plaintiff's favor that the insured falsely answered that he had last been treated by Dr. Downey nine years before the date of the application, whereas the testimony showed he had been treated *six years prior to that date by Dr. Hill for rheumatism.*

This last testimony was elicited from the beneficiary in the policy, who testified in her own behalf. She testified that she was present when the application for the insurance was made, and that her husband stated to the agent of the insurance company, who filled the blanks, that Dr. Hill had treated her husband for rheumatism six years prior to that date, but that it appeared the agent had not written down the answer in full.

In the case of *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, 196 S. W. 792, it was held that "knowledge affecting the rights of the insured which comes to the agent of the insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company; and the insurance company is bound thereby, in spite of a provision in the policy to the contrary, where the agent who solicited the business was charged with the duty of asking the applicant questions concerning his physical condition." See also

*People's Fire Ins. Assn. of Ark.* v. *Goyne,* 79 Ark. 315, 96 S. W. 365, 16 L. R. A. (N. S.), 1180; *Springfield Mutual Assn.* v. *Atnip,* 169 Ark. 968, 279 S. W. 15; *Ark. State Life Ins. Co.* v. *Allen,* 166 Ark. 490, 266 S. W. 449; *Old Am. Ins. Co.* v. *Wexman,* 160 Ark. 571, 255 S. W. 6; *Home Mut. Ben. Assn.* v. *Rowland,* 155 Ark. 450, 244 S. W. 719; *Home Mut. Ben. Assn.* v. *Mayfield,* 142 Ark. 240, 218 S. W. 371.

The testimony of the beneficiary is to the effect that the applicant correctly and truthfully answered the questions as to the names of the physicians who had treated her husband, and is to the effect that there was no collusion between the company's agent and the insured. Moreover, the application contains the answer that the applicant had an attack of rheumatism six years before the date of the application, so that the insurance company was advised of that fact when the policy was written, this being the occasion when the beneficiary testified her husband had been treated by Dr. Hill. In the application the insured was asked to give the names of two doctors who knew him, and the name and address of Dr. Hill was given in answer to this question.

Under the facts stated we cannot say that the jury was not warranted in finding that there had been no breach of the warranty in either of the particulars stated, and the judgment must therefore be affirmed, and it is so ordered.