LIFE & CASUALTY INSURANCE COMPANY *v.* DUNHAM.

4-2680

Opinion delivered July 11, 1932.

*John A. McLeod, Jr.,* and *H. Jordan Monk,* for appellant.

*A. G. Meehan* and *John W. Moncrief,* for appellee.

MEHAFFY, J. The appellee, Alma Dunham, commenced this action in the Arkansas County Circuit Court against the appellant, Life & Casualty Insurance Company of Tennessee, for the recovery of $435 alleged to be due her from appellant, under a policy of insurance, written on the life of her son, Theodore Clemons. The policy was issued under the industrial plan, and did not require a medical examination prior to its issuance. The application was signed at Stuttgart, Arkansas.

The insured was an inmate of the State Hospital for Nervous Diseases, and it is contended by appellant that he was there as an inmate at the time the application purported to have been signed. The policy is dated in March, 1931. The insured was paroled from the asylum March 20, 1931, and was returned in April, 1931, and died there from general paralysis, caused by syphilis, in June, 1931.

The appellant, in its answer, denied the material allegations of the complaint, and alleged that there was fraud on the part of the insured in obtaining the policy sued on by reason of misrepresentations as to health. It alleges the insanity of the insured at the time the policy was issued, and, as a further defense, pleads a specific

provision of the policy that, should the insured die within two years of the date of the policy, and had, before its date, been treated for a serious disease by a physician, the company would only be liable for the amount of the premiums paid, which it alleged was $3.75, and it tendered that amount in court. The appellant also charged that the policy was issued and delivered through fraud of the said insured, and upon false and fraudulent misrepresentations, warranties and statements of the applicant.

After the evidence was introduced, attorney for appellant stated that they had pleaded fraud in the answer, but they now waive that, and state that no one perpetrated any fraud in obtaining the insurance on the deceased, Theodore Clemons.

The case was tried before a jury, resulting in a verdict in favor of appellee for the full amount stated in the policy. Motion for new trial was filed, which was overruled by the court, and the case is here on appeal.

It is contended first by the appellant that the court erred in its refusal to give instruction No. 1, requested by it. No. 1 reads as follows: ''You are instructed to find for the plaintiff in the sum of $3.75.''

The appellant contends that Theodore Clemons, the insured, had been treated by a physician for a serious disease and complaint before the date of the policy, and that he died from said disease at the State Hospital for Nervous Diseases within two years from the date of the policy.

The undisputed evidence shows that Gurling, the agent of appellant, solicited the insured.

Mrs. Alma Dunham, the appellee, and the mother of the insured, testified that she had been acquainted with Mr. Gurling some time before this insurance was taken out; he had been coming there collecting on other policies, and he asked witness every time he saw the boy to let him write some insurance on him; that she did not know that he could get insurance, because he had been hurt; that he fell from a building in Little Rock and injured himself, and she did not think she could get any

insurance on him. Mr. Gurling, the agent, said he believed he could, and that he would take it up with the insurance company right away. Gurling had been going to Mrs. Dunham's place for some time, he knew the insured, knew his mother, and knew that he had been in the insane asylum. He also knew that the insured had been seriously injured by falling from the third story of a building in Little Rock, and she told Gurling that he was very nervous and had been put in the hospital, and that he had better have him examined. She told him she would keep the premiums paid up, as she had two other boys with insurance in the same company, and, after she told him this, he wrote the insurance.

It therefore appears from the undisputed testimony that the insured had fallen from the third story of a building, and that the agent knew this, and knew that he had been an inmate in the hospital for nervous diseases, and therefore knew that he had been treated by a physician for a serious ailment. There is no positive evidence that the agent knew he had syphilis, and the probability is that the insured himself did not know what his ailment was. The mother of the insured appears not only to have told him all she knew about the physical and mental condition of the insured, but she told the agent, after telling about his injuries and ailments, that he had better have him examined.

It is true that one might know that a person was in the insane asylum without knowing that he had any serious physical ailment, but certainly one could not know that a person in the insane asylum had fallen from the third story of a building without knowing that he had been attended by a physician for a serious complaint. After the agent knew these things, he did not ask the insured any questions about his health or about doctors, and he did not ask the mother any questions about the insured's health. The agent himself wrote the application, and the insured signed it, but did not read it. The answers in the application were written by the agent, and not by the insured. The application was signed, and

Mr. Gurling delivered the policy later. The insured was working about the hotel, which belonged to Alma Dunham.

The manager of the company was with Gurling when the policy was delivered. When it was delivered, neither the insured nor witness read it.

The evidence of appellee concerning the writing and signing of the application and the delivery of the policy, and her evidence as to what the agent knew about insured's condition are not only undisputed, but they are corroborated by other witnesses.

It is true that the insured was treated before the date of the policy for a serious complaint by a physician, but it is also true that appellant's agent knew of his falling, and of his treatment in the insane asylum. Mrs. Dunham was asked if she knew whether or not a year before that time, or longer, he was afflicted with syphilis. She answered that she did not know, but she knew and told the insurance agent that he had been hurt.

It conclusively appears that, at the time the application was taken, and at the time the policy was delivered, appellant's agents knew that the insured had had a serious complaint, and that he had been treated at the Hospital for Nervous Diseases. If the insurance company knew before the date of the application that insured had been attended by a physician for any serious disease or complaint, whether it knew what the specific complaint was or not, would make no difference. The insurance company did know that he had been attended by a physician for a serious disease, and, if it wished to know what specific complaint, it should have made inquiry.

The record shows that the agent who wrote the application and delivered the policy knew the condition of the insured; knew that he had been in the hospital, and knew that he had had a fall from a third story of a building, but he did not ask the insured any questions, but wrote the application himself with a knowledge of all the facts detailed above.

We have held that knowledge affecting the rights of the insured which comes to the agent of the insurance company, while he is performing the duties of his agency, in receiving applications for insurance and delivering policies, becomes the knowledge of the company, and the insurance company is bound thereby in spite of a provision in the policy to the contrary, where the agent who solicited the business was charged with the duty of asking the applicant questions concerning his physical condition. *Southern Insurance Co.* v. *Floyd*, 174 Ark. 372, 295 S. W. 715.

There is no dispute about the fact that Mr. Gurling, the agent of the company, had knowledge of the physical condition of the insured, while he was performing the duties of his agency in receiving the application and delivering the policy, and the agent in this case was charged with the duty of asking applicant questions concerning his physical condition. The undisputed evidence also shows that the agent brought this policy to the insured and said, at the time, that it was for $435, and that it was all right, and they relied on what he said.

It is apparent that the insured and his mother were led to believe by the agent that they were getting a policy for $435. The undisputed evidence shows that, when the policy was delivered, appellee asked the agent, and the agent said the company had agreed to let him write the boy up, and they took the policy, and kept the premiums paid up. $435 is the amount agreed upon, and neither insured nor his mother read the policy. The agent brought it and said it was for $435.

In speaking of insurance contracts, this court said, speaking through Chief Justice HILL: "Insurance contracts are not, as a rule, made like other contracts. They are prepared by one party to the contract, and the other party thereto has no opportunity to deal with his contractor as to the terms, conditions, and limitations of the contract. The only option open to him is to contract or not to contract, and when he contracts it is upon terms

prepared in advance by the other party, and reduced to printed form, which is sought to be as unchangeable as the laws of the Medes and Persians.

"To procure these contracts of insurance, agents are sent forth whose duties are limited to procuring insurance, and various clauses are inserted in the policies, and in the application therefor, disabling the agent from binding the company in any manner not stipulated in the policy. Can one party to a contract thus prevent himself being bound by the ordinary principles governing principal and agent? If a man sends forth an agent and clothes him with authority to do certain acts, his acts within the scope of that authority are binding upon the principal; and moreover, if he clothes him with apparent authority to do certain acts, and privately instructs him to the contrary, and the agent proceeds to do those acts within the apparent scope of his authority, but contrary to his private instructions, still the principal is bound. When an agent does anything within the real or apparent scope of his authority, it is as much the act of the principal as if done by the principal himself." *People's Fire Ins. Co.* v. *Goyne,* 79 Ark. 315, 96 S. W. 365, 16 L. R. A. (N. S.) 1180, 9 Ann. Cas. 373.

In the instant case the company's agent was dealing with a person who, he not only knew, had been in the insane asylum, and had been seriously hurt and was very nervous, but the agent did not ask him a question. He wrote the application himself. He not only knew these facts, according to the evidence of appellee, and knew that the insured was insane, but he knew that the mother with whom he dealt did not read the policy, and probably would not have understood it if she had. And these parties were informed, and the agent of the insurance company was bound to know that they believed, that the insurance policy was for $435, and that this amount would be payable upon the death of the insured.

Appellee also offered in evidence the testimony of F. W. Dunham, the husband of Alma Dunham, but this

was excluded from the jury. He was acting as agent in paying the insurance premiums, and, since he was paying the premiums as agent of the insured, the statement of the agent was competent. Dunham stated that he asked the insurance agent if the insurance was any good, and he said, if the boy should die that night, his mother would get every dollar of it, and witness then paid him the premium.

Appellant states that, since the defense of fraud was waived, the sole defense was the limitation in the policy. If the insurance agent, knowing the facts detailed above, procured the application and delivered the policy, after having led the insured to believe that he was getting a policy for $435, this would constitute a waiver of the limitation in this policy. This, however, is a question of fact for the jury under proper instructions, and it is for the jury to determine whether there was a waiver or an estoppel. If there was, plaintiff is entitled to recover. If there was not, then she is entitled to recover $3.75 only.

Objection was also made to the evidence as to the application. We think, under the circumstances in this case, this evidence was competent because it tended to show that the insurance company's agent did not rely on anything said by either the insured or his mother, and, if appellee's testimony is true, led them to believe that they were getting a policy for $435.

Appellant next contends that the instructions are erroneous and conflicting. The instructions are in conflict, but we think it is unnecessary to set them out here. The only question, so far as this record is concerned, is whether the insurance company waived the provision in the policy, or is estopped from setting it up, and, as we have already said, these are questions of fact for the jury. There will be no difficulty in the trial court's properly instructing the jury when the case is tried again.

For the error in giving conflicting instructions, the judgment is reversed, and the cause remanded for a new trial.

Mr. Justice SMITH concurs.