STATE LIFE INSURANCE COMPANY *v.* JOHNSON.

4-3845

Opinion delivered April 29, 1935.

*James E. Sater* and *Bernal Seamster,* for appellant.
*John Mayes,* for appellees.

MEHAFFY, J. The appellant filed its complaint in the Washington Chancery Court against the appellees and asked for judgment and foreclosure of the mortgage on the property described in the complaint. It alleged that S. H. Johnson and his wife, Ollie Johnson, on April 7, 1923, executed and delivered to the Denton-Coleman Loan & Title Company, a corporation, their note and bond in the sum of $4,000 due May 1, 1930, with interest at 6 per cent. per annum from May 1, 1923, payable annually on May 1st of each year, and with interest after maturity until paid at the rate of 10 per cent. per annum, and with the further provision that, if default be made in the payment of any of the installments of interest at the time and place when and where the same became due, then at the election of the legal holder thereof the principal sum, together with the accrued interest thereon and a reasonable compensation for the services of an attorney, should

at once become due and payable; that, to secure the payment of said note or bond and interest thereon, the said S. H. Johnson and wife, Ollie Johnson, executed and delivered to C. A. Allen, trustee for the Denton-Coleman Loan & Title Company, their mortgage conveying to said trustee the land described in the complaint; that Ollie Johnson, wife of S. H. Johnson, joined and released, relinquished, conveyed and acknowledged the conveyance of her dower and homestead rights, and said mortgage was duly recorded; that thereafter and before maturity the Denton-Coleman Loan & Title Company sold, assigned and delivered to the appellant the principal note together with the installment interest coupon notes and assigned and transferred to the appellant the mortgage securing the same, and the assignment thereof was duly recorded in Washington County; that appellant is, and has been ever since the assignment, the owner and holder of said principal note and the interest installment coupon notes and mortgage.

Thereafter an extension agreement was entered into between appellant and S. H. Johnson and Ollie Johnson, by which the balance of $3,400 of principal became due and payable May 1, 1937. It was agreed that the legal holder might declare the entire debt due at its option if there was default in the payment of the interest. The extension agreement was duly acknowledged and Ollie Johnson assigned, relinquished, conveyed and acknowledged the conveyance of her dower and homestead rights. Said extension agreement was duly recorded.

On December 27, 1932, there was paid on the principal $200, and interest was paid until May 1, 1932; that principal and interest payments due since that time have not been paid, and that appellees refused to pay; that appellees conveyed the real estate included in the mortgage to William Cannon, who is now the owner of said real estate subject to appellant's mortgage; the sum due is alleged to be $4,122.67.

Attached to the complaint were copies of the original note, together with the interest coupons, the mortgage, the assignment and extension agreement.

On November 9, 1933, appellant filed an amendment to its complaint making Lillie Cannon, wife of William Cannon, a party. Thereafter the appellees filed their answer admitting the execution of the notes and mortgage, but denying any indebtedness, stating that the real estate was purchased by William Cannon from S. H. Johnson, and that both principal and interest had been fully paid, and asked that the notes and mortgage should be brought into court and canceled, and that appellant should be required to satisfy the record of said mortgage.

Appellant's witnesses testified that the First Mortgage & Investment Company had no authority to receive payment before the debt was due. Several letters were introduced in evidence, and it is undisputed that the First Mortgage & Investment Company did not pay to appellant the amount it collected from appellees.

Witnesses for appellees testified as to the payment of the debt in full. The evidence, however, shows that, when the payment was made to the First Mortgage & Investment Company, it did not have possession of the notes and mortgage, but they were in the possession of the appellant.

The chancery court found that at the time of the payment the principal amount of said loan was not due, but that it was within the apparent scope of authority of the First Mortgage & Investment Company to accept the payment, and decreed that the complaint of appellant be dismissed, and that the notes, interest coupons, mortgage and extension agreement held by appellant be canceled and delivered to appellee, William Cannon, and the clerk of the court was ordered to cancel upon the records the mortgage and extension agreement, and to show that the same was satisfied in full. To reverse this decree this appeal is prosecuted.

The undisputed proof in this case shows that the debt was paid to the First Mortgage & Investment Company, the agent of appellant. It is, however, insisted by the appellant that the mortgage company had no authority to collect the debt, it did not have the notes and mortgage, but they were in the possession of appellant, and

the debt was paid before maturity. The only question therefore for us to decide is whether the mortgage company had authority to receive the money.

The appellant was the owner, according to its own statement, of some forty odd mortgage loans on properties located in Benton, Madison and Washington Counties, Arkansas. One of them was the loan involved in this suit. The undisputed proof shows that the appellant always retained the notes and mortgages until it received the money, and would then send them to the First Mortgage & Investment Company. This was its custom. It authorized the mortgage company to collect and remit to it, and it would then send the notes and mortgages to the mortgage company. It not only did this, but it, by letter, directed the borrowers to pay to the First Mortgage & Investment Company.

On September 10, 1931, the appellant wrote to the borrowers, including Johnson, the following letter:

"September 10, 1931.

"Dear ..........................,
   In re: Loan No.

Under date of August 15, 1931, we notified you that we were taking our Arkansas loans out of the hands of the Denton-Coleman Loan & Title Company of Butler, Missouri, and that 'all payments, until further advised by us, must be made direct to this company to our home office.'

This is to advise you that we have placed our Arkansas loans—yours among others — with FIRST MORTGAGE & INVESTMENT COMPANY (successor to Farmers' Trust Company), Rogers, Benton County, Arkansas. In future, until otherwise advised, instead of making remittances direct to us, please make same through the office of the First Mortgage & Investment Company, which firm you will find ready and eager to give you prompt and considerate attention.

"Yours very truly,
   "The State Life Insurance Company,
      "James I. Dissette,
         "Second Vice-President."

Here was a direct statement of the appellant to Johnson to pay to the First Mortgage & Investment Company, and under the undisputed proof the mortgage company had authority to collect.

But it is earnestly insisted that the mortgage company had no authority to collect before the debt was due. Cannon, who purchased the property, testified that Johnson showed him the letter authorizing the payment to be made to the First Mortgage & Investment Company, and that on December 26, 1931, the payment was made in full.

J. F. Patterson testified that he was in the office at Monette and met Mr. Zinn, the vice-president of the appellant, and superintendent of the mortgages, and who was in charge of the mortgage loan investments; that Zinn told witness to make collections, and he asked Zinn if he should receive interest before it was due, and Zinn told him not to add penalty. Witness said so far as he knew appellant never made any protest or objection to the collection of a loan before maturity.

I. C. Patterson, who was the president of the First Mortgage & Investment Company, testified that the mortgage company sold loans to the appellant company beginning in 1923, and serviced the S. H. Johnson loan for the appellant, beginning some time in 1931; that the appellant authorized the First Mortgage & Investment Company to make the collections and service the details in connection with the loan as they might instruct; that appellant authorized them to collect principal and interest; that this loan was paid in full in December, 1931; that he was certain that he wrote letter, Exhibit No. 2, after he had talked with Mr. Dissette over the telephone; Mr. Dissette was chairman of the executive committee of the appellant; witness testified that he told Mr. Dissette over the 'phone that the loan had been paid, and that he would like to exchange another loan for it; that Mr. Dissette suggested that he wait until after the first of the year. The letter, Exhibit No. 2, referred to by witness, is as follows:

"First Mortgage & Investment Company
"December 26, 1931.
"Rogers, Arkansas.

"James I. Dissette, Second Vice-President,
"Mortgage Loan Department,
"State Life Insurance Company,
"Indianapolis, Indiana.

"Dear Mr. Dissette:

"*Re:* S. H. Johnson, No. 9926.

"As per our conversation over the telephone, we have an opportunity to make an exchange that would make payment of this loan in full, provided we can give you in exchange for part payment of the loan one of our loans for $3,000. I assure you that the one we offer is an attractive loan which would meet the requirements of your inspector.

"Owing to the rush of business at this particular time, we are giving you this information that it may be considered after the first of the year.

"I hope that this will be satisfactory to you.

"Yours very truly,
"I. C. Patterson, President."

It is true that the authority of an agent to collect does not necessarily authorize him to receive the debt before it is due. The law is stated in 1 Mechem on Agency, 690, as follows: "And even though an agent have authority to receive payment of an obligation, this would not ordinarily authorize him to receive it before it is due, and thus, for example, cut off future interest, or surrender a valuable security; or even expose the principal to the risk of a payment at a time when he had not bargained for it. A power to receive payment must therefore usually be construed as authority to receive payment at maturity and not before. A known usage of trade or course of business in a particular employment, or a habit of dealing between the parties, may, however, extend the ordinary reach of the authority. Thus an agent to loan money may be given such general authority over the subject as to authorize him to re-invest, change

the form or amount of securities, and receive payment upon securities before they are due.''

The undisputed evidence in this case shows that the First Mortgage & Investment Company was not only to make collections, but to service the loans, and witnesses testified that no objection was ever made to receiving money before the debt was due. The testimony of Mr. Patterson is that he told Mr. Dissette over the 'phone that the debt had been paid. The evidence of appellant's witnesses also show that, if the debt had been collected before maturity and transmitted to them, it would have been accepted in accordance with the company's regular practice, which requires the payment of three months' additional interest.

Mr. Dissette, in his testimony, admits that he had a telephone conversation with Mr. Patterson; that, as he recalls it, Patterson did not state from whom the collection had been made, but that a collection had been made of $3,000 from one of appellant's borrowers, and that the mortgage company had the money, and that, instead of sending the collection to appellant, wanted to send appellant a new high-grade loan; and Dissette testifies that he told Patterson that they would not consider new loan until after the opening of the new year, and that Patterson should make the remittance of this loan at once and any other collection he might have, in order that they might be included in the annual report; and he testified that Mr. Patterson assured him he would do this.

The appellant, in the testimony of Mr. Dissette, admits that it knew about the collection, and directed Patterson to send it to appellant. Dissette made no objection to the collection, although he says that Mr. Johnson's name was not mentioned. His evidence shows, however, that, no matter from whom the collection was made, the appellant made no objection to it, but directed the money to be sent to appellant.

The lower court, we think, was justified from the evidence in reaching the conclusion that the First Mortgage & Investment Company had authority to make the collection as it did, and to reach the conclusion that the appellant knew about it, and acquiesced in it. The letter

written by appellant gives express authority to make collections.

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing, such authority as he appears to have by reason of the authority which he has; such authority as a reasonably prudent person, using diligence and discretion in view of the principal's conduct, would naturally suppose the agent to possess." *American Southern Trust Co.* v. *McKee*, 173 Ark. 147, 293 S. W. 50.

"If a man sends forth an agent and clothes him with authority to do certain acts, his acts within the scope of that authority are binding upon the principal; and, moreover, if he clothes him with apparent authority to do certain acts, and privately instructs him to the contrary, and the agent proceeds to do those acts within the apparent scope of his authority, but contrary to his private instructions, still the principal is bound. When an agent does anything within the real or apparent scope of his authority, it is as much the act of the principal as if done by the principal himself." *Life & Cas. Ins. Co.* v. *Dunham*, 186 Ark. 121, 52 S. W. (2d) 620.

It is true that the authority of an agent to receive payment ordinarily does not give him authority to receive payment before the debt is due, but, if there is a known usage of trade or course of dealing giving him implied authority to do so, his principal will be bound.

We think the lower court was justified in holding that the First Mortgage & Investment Company was acting within the apparent scope of its authority in making the collection, and the decree is therefore affirmed.