## SPRINGFIELD MUTUAL ASSOCIATION v. ATNIP.

## Opinion delivered November 30, 1925.

1.  INSURANCE—RECOVERY OF PENALTY AND ATTORNEY'S FEE.—A mutual benefit association doing a life insurance business under the assessment plan, and not as a fraternal benefit society, as defined by Crawford & Moses' Dig., § 6068, is subject to the provisions of § 6155, *Id.*, imposing a penalty and attorney's fee upon an insurance company failing to pay a loss within the time specified in its policy.

2.  INSURANCE—ULTRA VIRES CONTRACT—WAIVER.—Where an insurance company bottomed its defense on the claim that, although its agent was correctly informed as to the age of the applicant for insurance, the agent conspired with the insured to write a false age in the application, and the beneficiary knowing such fact, failed to notify the insurer, such defense is inconsistent with the defense that the contract was *ultra vires*.

3.  INSURANCE—WHAT LAW GOVERNS.—Where an insurance contract was entered into and was to be performed in this State, and the insurer's answer admitted that the contract was not subject to the laws of the State which granted its charter, the contract is subject to the laws of Arkansas.

4.  INSURANCE—CONSTITUTION AND BY-LAWS—WAIVER.—Under the laws of this State, an insurance company, when not prohibited from doing so by statute, may waive provisions contained in its constitution and by-laws.

5.  INSURANCE—AUTHORITY OF AGENTS TAKING APPLICATIONS.—Where insurance companies authorize agents to fill out and send in applications as a basis for issuing policies, they cannot repudiate the acts of such agent within the scope of their real or apparent authority, except upon proof of fraud or conspiracy on the part of the insured and policy holder and agent to defraud the companies.

6.  INSURANCE—RESTRICTION AS TO INSURED'S AGE—WAIVER.—A provision in a mutual insurance company's constitution or by-laws restricting the age at which a policy may be issued is waived where the insurer's agent, with knowledge that an applicant's age is misstated, nevertheless filled out the application upon which the company issued its policy and received the assessments or premiums due on the policy.

7.  INSURANCE—INSURABLE INTEREST.—A son has an insurable interest in the life of his mother.

Appeal from Clay Circuit court, Eastern District; *W. W. Bandy*, Judge; affirmed.

*W. E. Spence* and *Haymes & Dickey,* for appellant.

*Arthur Sneed,* for appellee.

WOOD, J.   The Springfield Mutual Association, hereafter called appellant, is a Missouri corporation authorized to do business in Arkansas.   It is a mutual insurance association doing a life insurance business on the assessment plan.   It issued two policies of $1,000 each on the 2nd day of June, 1919, insuring the life of Mary Atnip in favor of George Atnip, hereafter called the appellee, as the beneficiary.   Under the terms of the first policy, if the death of the insured occurred within the first four months, the appellant was to pay $125, and under the second policy the sum of $100; and, if within the calendar month next succeeding, the sum of $125, the amount of the payment to increase each calendar month in the sum of $25 during the terms of thirty-five months, and at the expiration of forty months from the date of the policies the maximum amount of $1,000 to be recovered thereunder became payable on the death of the assured, provided the assessments had been duly paid under such rules as were set forth in the application and by-laws of the appellant, and provided proof of death was made as prescribed by the terms of the contract of insurance.

This is an action by the appellee against the appellant to recover on the policies.   The appellee alleged that the insured died on the first of April, 1923, and that the appellee had complied with all the provisions of the policies, and that the appellant was due the appellee on the policies the sum of $2,000, which the appellant refused to pay.   The appellee asked judgment for that sum with six per cent. interest from the date of the death of the insured, and also for twelve per cent. damages and attorney's fees.

The appellant admitted in its answer that it was an insurance corporation of Missouri authorized to do business in Arkansas, and that it had issued the policies in controversy as in the complaint alleged.   Appellant, among other things, alleged that it was not liable on the

policies because the policies or certificates issued by it are mutual benefit certificates on the assessment plan, and that the assured had not complied with the constitution and by-laws of the appellant in that constitution, 52D, and the by-laws, 52E, of the association, declare that the membership of the association is limited to persons under fifty-five years of age; that the alleged certificates or contracts of insurance were therefore *ultra vires,* and not binding on the appellant. The appellee identified and introduced the policies in evidence as above set forth, and testified that the assured was his mother; that he was the beneficiary in the policies; that he had paid the assessments to date which the appellant had received; that his mother had died on April 1, 1923, and that he had made proof of death as provided under the terms of the contract; that he had made demand on the appellant for the amount of the policies, which it had refused to pay. He stated that when the agent of the appellant, Schultz, solicited the insurance, he asked the appellee how old his mother was, and appellee replied that she would be sixty next June; that the agent told the appellee that the appellant company took policies from ten to sixty-five years of age. The agent then filled out the applications at the home of the appellee, and appellee paid to the agent the sum of $8, the amount of the assessment at that time. Appellee did not know that the company could not insure a person over fifty-five years of age. Appellee's mother was dependent on her children for support. Appellee did not know that the appellant did not write people at sixty-five years of age. The applications were made out and sent in, and the policies came to appellee through the mail, and he took them out of the postoffice.

The appellant called as a witness its secretary and treasurer. He identified the constitution and articles of association and by-laws of the appellant, at the time the policies were issued, and these were introduced in evidence. Witness Reaves testified that he was selling life insurance for the appellant; that he had a conversation

with the appellee in regard to selling him life insurance on his mother in 1922, and that the appellee told him then that he knew that the appellant only insured people up to fifty-five years of age, but that Schultz, the agent who solicited his application, told him he would fix it so that he could get the money. The secretary of the appellant testified that the first information the appellant had that the insured was over fifty-five years of age was after her death; that appellant got that information through proof of death. This witness, on cross-examination, testified that Schultz was appellant's agent authorized to take applications for insurance on people between the ages of ten and fifty-five years. It was shown that the appellee could neither read nor write.

The appellant introduced in evidence certain sections of the Revised Statutes of Missouri containing certain laws concerning insurance. Witness George Ross testified for the appellee in rebuttal, that he was present at the time of the conversation between the appellee and witness Reaves, one of the agents of appellant, and Ross testified that Reaves and the appellee had considerable dispute about the age; that Reaves told appellee that the appellant did not write people over fifty-five years of age, and appellee contended that it did, and said that the appellant had written insurance on his mother's life. The witness thereupon advised appellee to take the matter up with the appellant, but Reaves told the appellee that he would not say anything about it unless appellee wanted his money back. The appellant tendered to the appellee its check for $84.40 in full of all assessments paid by the appellee, which the appellee refused.

The appellant asked the court to instruct the jury to return a verdict in its favor, which the court refused. The appellant also prayed the court to instruct the jury that the policies in suit were Missouri contracts and governed by the laws of Missouri, and also to the effect that the constitution and by-laws of the association were binding on the association and each and every member there-

of, and in effect that the policies upon which this action was based were *ultra vires*, and not binding on the appellant; and also prayed several instructions presenting in different form the proposition that the policies upon which this action was founded were *ultra vires* contracts, and therefore not binding on the appellant, and that the appellant had not waived the provisions of its constitution and by-laws, and was not estopped by the act of its soliciting agent, or anything that the general officers of the appellant had done.

The court refused to give these prayers for instructions. The court granted prayers of appellant to the effect that if the assured, or the appellee, knew at the time the applications were made, that by reason of the age of the assured she was not entitled to become a member of the society, the appellee could not recover; that, if the agent soliciting the insurance was not authorized to receive applications for membership for persons over fifty-five years of age, and this fact was known to the appellee, there could be no recovery unless the jury found from the evidence that the insured gave her correct age, and the agent wrote it incorrectly in the applications; but, in that event, if the appellee had knowledge of the incorrect statement as to the age of the insured and failed to inform the appellant of that fact, the appellee could not be held to have acted in good faith, and the appellant would not be liable.

The effect of the instructions given at the instance of the appellant on this branch of the case was that, if the appellee gave the correct age to the agent soliciting the application for insurance, and such agent wrote a false age, and appellee knew it to be false at the time, then the appellee would not be entitled to recover. The jury returned a verdict in favor of the appellee in the sum of $2,000. Judgment was entered against the appellant in appellee's favor for that sum, and likewise in appellee's favor for a twelve per cent. penalty of $240, and for $300 attorney's fee, all of which was to bear interest

at the rate of six per cent. per annum.   From which judgment is this appeal.

We will dispose of the appellant's contentions for reversal in the order in which they are presented in the brief of its counsel. First, "that the association is a mutual benefit association doing business on the assessment plan." This contention is conceded by the appellee.

Second, "that no penalties or attorney's fee can be adjudged against such an association." Section 1 of act 308, approved March 29, 1905, (§ 6155 of C. & M. Digest) provides: "In all cases where loss occurs, and the fire, life, health, or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fee to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed-up as a part of the costs therein and collected as other costs are or may be by law collected."

Section 2 of the act provides: "That all laws and parts of laws in conflict herewith be and the same are hereby repealed, and this act shall take effect and be in force from and after its passage."

In *Illinois Banker's Life Ass'n.* v. *Mann,* 158 Ark. 425, at page 429, we quoted the first section of the act of 1905 above, and said: "This apparently includes all insurance companies, and does include all companies except those exempted by other legislation from the operation of that section, and those are the companies included in § 4352, Kirby's Digest, as amended by act of March 28, 1917, C. & M. Digest, § 6068, *et seq.*" After the passage of the act of 1905, *supra,* all insurance companies came within the purview of that act except those companies referred to in the act of March 28, 1917 (§ 6068, C. & M. Di-

gest), known as fraternal benefit societies, as defined in
§ 6068 *supra et seq.*

It is alleged and conceded that the appellant is a
mutual benefit association doing a life insurance business
under the assessment plan, but there is nothing in this
record to show that such association is the same as a
fraternal benefit society, as defined in § 6068 *et seq.*
*supra.* As was said in *Indiana Lumbermen's Mutual
Ins. Co.* v. *Meyer Stave & Mfg. Co.,* 158 Ark. 199, "the
penalty statute applies in the broadest terms to suits to
recover for losses by 'fire, life, health, or accident insur-
ance.'" The above statute repealed all laws in conflict
therewith, and it contains no exemptions or exceptions of
any kind, and none have been made since, except fraternal
benefit societies, as defined in § 6068 *et seq.* of C. & M.
Digest. It is not pretended that the appellant is not do-
ing a life insurance business in this State. Its only con-
tention is that it is doing an insurance business on the
assessment plan. But that does not make it any the less
a life insurance association doing a life insurance busi-
ness in this State. The contracts it issues are life in-
surance contracts, and such companies come within the
purview of the statute applying to all insurance com-
panies unless they are expressly exempted by the latter
statute as shown by the decisions *supra.* See also *Sov-
ereign Camp W. O. W.* v. *Newman,* 142 Ark. 132, where we
held in effect that insurance certificates issued by benefit
societies to their members must be regarded the same as
any other ordinary policy or contract of insurance, so far
as relates to the construction and enforcement of such
contracts.

The appellant next contends that the certificates are
void, and never were a binding contract on the associa-
tion. The prayers for instruction which the appellant
presented in the court below are not consistent. In some
of them the appellant prayed the court to instruct the
jury that, under the laws of this State, the officers of ap-
pellant had no authority to waive the provisions of its

constitution and by-laws in regard to the age limit of
those who could become members, and that, if a misrepre-
sentation was made as to age of the assured, such mis-
representation rendered the policy void as an *ultra vires*
contract.   But in other prayers for instruction, which
were given *at the instance of the appellant,* the jury were
instructed that if the agent of the company was not au-
thorized to receive applications for membership from per-
sons over fifty-five years of age, and this fact was known
to the appellee at the time the applications were pre-
pared, there could be no recovery unless the jury found
from the evidence that the insured gave her correct age,
and the agent wrote it incorrectly on the application, and
in that event, if the appellee had knowledge of the incor-
rect statement as to the age of the insured and failed to
inform the appellant of that fact, the appellee could not be
held to have acted in good faith, and the appellant would
not be liable.   The last proposition announced was em-
bodied in appellant's prayer for instruction No. 9 and
was given as requested.   Appellant's prayer for instruc-
tion No. 10 was also granted, and that instruction was of
similar purport.   It therefore appears that the appel-
lant waived its contention in the trial court that the con-
tracts of insurance were *ultra vires* and void because it
will be noted from the above prayers for instructions,
which the court gave, that the appellant bottomed its de-
fense on the contention that the appellee and the appel-
lant's agent entered into a conspiracy to defraud the ap-
pellant in that, although they were correctly informed as
to the age of the applicant for insurance, nevertheless
the agent wrote a false age in the application, and the ap-
pellee, knowing such fact, failed to notify the appellant.
Of course, these instructions were wholly inconsistent
with appellant's defense that the contracts were *ultra
vires* and void.

But, be this as it may, we cannot concur in the con-
tention of appellant's counsel that the certificates or
policies herein are *ultra vires* contracts.   Counsel for ap-

pellant contend that, inasmuch as the appellant is a Missouri corporation and chartered under the laws of that State, which forbid the appellant from issuing policies on the life of persons over sixty years of age, the policies herein are null and void. But appellant in the trial court did not set up in its pleading that these policies were Missouri contracts. It simply alleged that appellant was "chartered under the laws of the State of Missouri and authorized to do business in the State of Arkansas, but is not subject to the laws of the State of Missouri or of the State of Arkansas." Its whole defense was bottomed on the theory that the provisions of the constitution and by-laws could not be waived, no matter whether the contracts were Missouri or Arkansas contracts. In view of this answer of appellant, the trial court was justified in treating the policies as Arkansas contracts, and we have so treated them.

Counsel further contend that the constitution and by-laws of appellant are written in conformity with the statutes of Missouri, forbidding applications to be taken and policies issued insuring persons over sixty years of age, and that these provisions cannot be waived by any of the agents or general officers of the appellant. Many authorities are cited to sustain appellant's contentions, among them some of our own cases, for example, *United Order of Good Samaritans v. Meekins,* 155 Ark. 407. None of these cases have any application to the case at bar. In the case just mentioned a benefit certificate was issued to a member of a fraternal benefit society organized under the laws of this State, which forbid such organizations from admitting to its membership persons more than sixty years of age. In that case we held that there can be no recovery on a benefit certificate issued to a member over the age of sixty years, because such certificate was issued contrary to the statute. Counsel insist that there is a similar statute in Missouri forbidding appellant from issuing its certificates to persons over sixty years of age, and hence the policies herein are

void under the authority of the Arkansas case just cited. But there is no statute in this State forbidding mutual insurance or benefit associations on the assessment plan from insuring members over sixty years of age. We have already called attention to the fact that appellant is not a fraternal benefit society. Hence the statutes governing such societies have no application to appellant. Moreover, appellant is under a misapprehension of the law in assuming that the policies in controversy are Missouri contracts. In *Mutual Reserve Fund Life Assn.* v. *Minehart*, 72 Ark. 630, we held that policies of life insurance made and delivered in this State are Arkansas contracts. Although the appellant is a Missouri corporation, nevertheless it is authorized to do business, and is doing business, in this State, soliciting applications, and issuing its certificates or policies of insurance and delivering the same in this State. It is therefore an Arkansas contract. These policies, being Arkansas contracts, must be governed by the laws applicable to such contracts in this State. Therefore, the numerous authorities cited by the appellant to support his contention, to the effect that the provision in its constitution and by-laws as to the age limit cannot be waived, have no application in this State. For the rule in our State is that an insurance company, when not inhibited by statute from doing so, may alter, remake, or waive the provisions of its constitution and by-laws. The power which makes has the power to destroy and remake. And when these companies send out their soliciting agents to take applications for insurance clothed with the real or apparent authority to fill out such applications and send them in to the company, which applications are made the basis for the issuance of insurance policies, the companies cannot repudiate the acts of these soliciting agents within the scope of their real or apparent authority, except upon proof of fraud or conspiracy on the part of the insured and policy holder and agent to defraud the companies. As we have seen, the question of fraud or collusion on the part of the

soliciting agent of the appellant and the appellee who acted on behalf of the policy holder in conducting the negotiations for the application was submitted to the jury under instructions requested by the appellant, and the verdict on that issue is conclusive here against the appellant.

The jury were warranted in finding that the age of the assured was correctly stated, but that the appellant's soliciting agent wrote a false age in the application, and that the appellee did not have knowledge at the time the application was taken that the appellant's agent was forbidden by the constitution and by-laws of appellant from insuring persons over sixty years of age. The law governing such cases is announced in several decisions of this court. One among the last is that of *Home Mutual Benefit Association* v. *Rowland*, 155 Ark. 450, where we held, quoting syllabus, "A by-law of a fraternal benefit society restricting the age at which a benefit certificate may be issued is waived where the society's agent, with knowledge that an applicant's age is misstated," nevertheless filled out the application upon which the company issued its policy and received the assessment or premiums due on the policy.

In *United Assurance Ass'n.* v. *Frederick*, 130 Ark. 12, 17, we held that "knowledge of the agent who wrote the application is imputed to the company" (citing several cases). See also *Mutual Aid Union* v. *Blacknall*, 129 Ark. 450; *Sov. Camp W. O. W.* v. *Newsum*, 142 Ark. 132; *Eminent Household, etc.*, v. *Heifner*, 160 Ark. 624, and cases there cited.

Unquestionably, under the doctrine of the above and other cases of this court, the testimony was amply sufficient to warrant the jury in finding that the appellant waived the provision of its constitution and by-laws, and that it is estopped from asserting non-liability by the conduct of its agent and officers in soliciting these applications, accepting the same, issuing the policies thereon,

and receiving the assessments or premiums due to keep the policies alive until the death of the assured.

Appellant's last contention is that the appellee had no insurable interest in the life of his mother. This contention is wholly without merit. *Warnock* v. *Davis,* 104 U. S. 775, is cited and quoted by us in *Home Mutual Benefit Ass'n.* v. *Keller,* 148 Ark. at page 361, as follows: ''It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful, as operating more efficaciously, to protect the life of the insured, than any other consideration.''

There is no reversible error, and the judgment is therefore affirmed.