MUTUAL RELIEF ASSOCIATION *v.* RAY.

Opinion delivered March 7, 1927.

1.  INSURANCE—LIABILITY OF MUTUAL RELIEF ASSOCIATION.—A mutual relief association, doing business on the assessment plan, *held* to be a *de facto* corporation and liable for damages for a violation of its contract to its policy or certificate holders the same as any life insurance corporation.

2.  INSURANCE—AUTHORITY OF MUTUAL BENEFIT ASSOCIATION TO INCREASE ASSESSMENTS.—A by-law of a mutual assessment association authorizing the directors to raise or lower the incidental fee paid by an applicant for membership to defray expenses incurred in the completion of a company in the association *held* not to authorize the association to increase the assessments payable by members.

3.  INSURANCE—AUTHORITY TO INCREASE ASSESSMENTS.—In the absence of any provision in a policy or in the by-laws of a mutual benefit association, authorizing such association to increase its assessments to conform to statutes subsequently enacted, such association had no authority to increase the assessments on policies issued before the enactment of such statutes.

4.  INSURANCE—PAYMENT OF BENEFITS.—A provision of a policy of an assessment benefit association that, if the beneficiary dies before the insured, the benefits shall be paid to the insured's legal representative, defines the rights of the policyholders in such case, and does not apply where the association repudiates liability on the policy before the death of either beneficiary or member.

5.  INSURANCE—RIGHTS OF BENEFICIARY.—A provision in a policy of a mutual benefit association making the benefits under the policy payable to insured's legal representative in case the beneficiary named dies before the insured shows that the beneficiary did not have an absolute and unrestricted vested interest.

6.  INSURANCE—REPUDIATION OF CONTRACT—RIGHT OF ACTION.—Where a beneficiary's rights under a mutual assessment association's policy were not vested and the present value of the policy was uncertain, the beneficiary had no cause of action on the association's repudiation of the contract, but the insured did have a cause of action.

7.  INSURANCE—BREACH OF CONTRACT—RIGHT OF ACTION.—The rule that, when one party to an executory contract prevents a performance of the contract or puts it out of his power to perform it, the other party may regard the contract as terminated and demand the damages sustained, applies to insurance contracts.

8. INSURANCE—LIABILITY ON BOND OF ASSESSMENT ASSOCIATION.—
A bond given by an assessment benefit association under Crawford
& Moses' Dig., § 6016, conditioned for the prompt payment of all
assessments to parties or beneficiaries entitled to them and mak-
ing such sureties liable for any violation of conditions or any loss
which may accrue to policyholders or beneficiaries, *held* to bind
the sureties merely to see that the insurer pays over all assess-
ments to parties or beneficiaries entitled thereto, but not to make
them liable for the association's repudiation of any liability.

9. INSURANCE—REPUDIATION OF CONTRACT—DAMAGES.—Where an
assessment benefit association wrongfully repudiated its con-
tract, the insured may treat the contract as rescinded and recover
all assessments paid, with interest from the date of payment of
each assessment.

Appeal from Logan Circuit Court, Southern Dis-
trict; *James Cochran,* Judge; reversed as to sureties;
affirmed as to association.

*John P. Roberts* and *Carmichael & Hendricks,* for
appellant.

*Evans & Evans,* for appellee.

WOOD, J. Three separate actions were instituted in
the Logan Circuit Court by separate plaintiffs against
the Mutual Relief Association and W. T. Roberts, John
P. Roberts and Chas. X. Williams. It is alleged in the
complaints that the defendant association was a mutual
life insurance company which was authorized to do, and
was doing, business in this State; that the other defend-
ants were owners, directors and bondsmen of the associa-
tion. It was alleged that, in consideration of the applica-
tions and the payment of the initial premiums, the
association issued its policies insuring the lives of the
respective plaintiffs in favor of the beneficiaries named
therein, who were also plaintiffs in the actions. The poli-
cies provided, among other things, that, in consideration
of the applications, which were made a part of the poli-
cies, and the payment of the premiums, the association
would pay to the beneficiaries, in case of the death of the
assured within six months, the sum of $100, and, if death
occurred in the next calendar month, the sum of $112.50,
the amount of the payment to increase thereafter in the

sum of $12.50 per calendar month for a period of seventy-eight months from the date of the policies, until the maximum amount of $1,000 was reached, which should thereafter remain the sum to be paid. The amounts due under the policies were to be paid from assessments of the members and to be paid only upon condition that the assessments were paid under the rules and by-laws of the company. Upon failure of the members to pay the assessments as provided in the contract, the policies became null and void. The policies contained a provision that no suit or proceeding shall be brought after a lapse of one year from the date of the death of a member. The assessments, upon the death of member, equaled the initial assessment plus one cent per month during the time the member had been connected with the association until the seventy-eighth month from the date of the policy, when the maximum assessment would be $1.32 in Mrs. Ray's policy, $1.25 in Mrs. Gray's and $1.11 in Mrs. Crawford's. The certificate or policy contained a provision that, in the event of the death of the beneficiary prior to the death of the member, the benefits accruing under the policy were to be paid to the legal representative of the member. Mrs. Ray's policy was issued November 18, 1913, Mrs. Gray's on January 31, 1914, and Mrs. Crawford's on September 5, 1914. It is alleged in the complaints that the plaintiffs had complied with the terms of the contract of insurance on their part; that, early in 1921, the association, in violation of their contract, increased their monthly assessments above the maximum assessments under the policies. They alleged that they refused to pay these increased sums, but tendered the amount which they were required to pay under the policies, which the association refused to accept and thereby breached the contract of insurance, to the damage of plaintiff, for which they prayed judgment.

The defendants moved to dismiss the complaints on the ground that the actions were premature, inasmuch as they were instituted before the death of the assured. This motion was overruled, and the defendants answered,

admitting the contracts of insurance, but denied that they had violated their contract, and admitted that the association, through its directors, had raised the premium rates as alleged in the complaint, but alleged that they had authority to do so under the constitution and by-laws of the association and terms of the insurance contracts. The defendants admitted that they were the bondsmen of the association, and alleged that, under the terms of the bond, they were only liable for the payment of all moneys collected by the assessment from the members, and that they had not violated the terms of the bond and were not indebted to the plaintiffs in any sum under the bond.

We deem it unnecessary to set out in detail the testimony. Suffice it to say there was testimony on the part of the appellees tending to sustain the allegations of their complaints. It was shown that an attempt was made to incorporate the association under the laws of the State of Arkansas, in the year 1913, its purpose being the mutual relief and insurance of the lives of its members and the protection of the beneficiaries named in the certificates or policies of insurance. The association was divided into one or more companies, composed of not exceeding 1,000 members to each company, and the amounts due under the policies were paid by assessments levied upon each of the members of the company to which the assured belonged, and no assessment could be made for the beneficiaries of any member who was not in good standing at the time of his death. The association had a president, vice president, secretary and treasurer, general manager, and superintendent of agents, with the customary duties of such officers. Its business affairs were managed by these officers, who were elected by the board of directors. The officers and directors were entitled to reasonable compensation for their services, to be paid out of the funds of the association after all death claims were paid which had then accrued. All questions of management were decided by a majority vote of the board of directors. The duties of the officers were

prescribed by by-laws of the association. There was a provision in the by-laws as follows: "Prompt and due payment of all assessments made by the association up to the time of the death of any member and policyholder shall be a condition precedent to the right to collect death benefits from this association."

Section 3 of the by-laws is as follows: "This association, upon receiving satisfactory proof of the death of a member and policyholder in good standing, will pay to the beneficiaries named in the policy the death benefit as provided for in the policy of such member and in the by-laws of this association, within thirty days after the production of such satisfactory proof. After the payment by this association of such death benefit, the secretary shall immediately levy an assessment upon each member of the particular company in which the said death benefit had been paid, and mail notice of such assessment to each member of said company. (Each member of said company shall, upon receipt of such notice, pay such assessment to this association at its home office)."

The parties who organized and constituted the association were W. T. Roberts, C. X. Williams, T. H. Ward and J. H. O'Brien. They also constituted its board of directors. The above parties attempted to organize themselves into a corporation under the provisions of § 1788-1797 of C. & M. Digest, but the record does not show that any certificate of incorporation was granted to them under the above provisions. The record shows, however, that they assumed to act as a board of directors of a business corporation known as the Mutual Relief Association. The causes were, by consent, consolidated and tried by the court sitting as a jury. The court rendered judgment in favor of the plaintiff Ray in the sum of $471.41, in favor of the plaintiffs Gray *et al.* in the sum of $397.51, and in favor of Crawford *et al.* in the sum of $205.40. From these judgments is this appeal.

1. The appellants first contend that the causes of action should be dismissed because they were prema-

ture. They insist that, under the provisions of the contract of insurance and the charter and by-laws of the association, as above set forth, an action cannot be maintained against the association and the individuals on the bond until the death of the certificate or policyholder; that such is the effect of contracts of mutual life insurance associations organized as was the appellant. But, after a careful consideration of the provisions of the certificate or policy issued by the appellant and the by-laws which constituted a part of the contract of insurance, we are convinced that the appellant is a business organization, carrying on the business of life insurance on the assessment plan, and that it is liable in damages for a violation of its contract to its policy or certificate holders the same as any other corporation or company doing a life insurance business would be liable for a breach of contract. The fact that the appellant is designated a "mutual relief association" does not exempt it from liability in damages to those who hold its contracts of insurance and who have been damaged by reason of the failure of the governing body of such association to comply with the provisions of the contract. While there are record recitals showing that the appellant was constituted a corporation under the provisions of §§ 937-948, inclusive, of Kirby's Digest, the same being §§ 1788-1797 of C. & M. Digest, yet the testimony in this record by the witnesses and the articles of association prove conclusively that the appellant was not, and could not have been, organized as an eleemosynary corporation for charitable and benevolent purposes, under the above provisions of our law. Under the statutes above mentioned it required nine persons to constitute a corporation, whereas the testimony here shows that this corporation was organized by only four persons. The record also shows that these four individuals elected three of their number as directors of the corporation and these in turn elected themselves as general officers of the corporation. This record nowhere discloses that this association is an

eleemosynary corporation organized for benevolent and charitable purposes. The name, Mutual Relief Association, does not accurately characterize the real purpose and business of the corporation, as shown by its organization, management, by-laws and certificates or policies evidencing its contract with its members.

After a careful examination of the record we are convinced that the appellant at most is a *de facto* corporation, not fraternal, as set forth in § 6068-6120 of C. & M. Digest, but a business *de facto* corporation doing a life insurance business in this State on the mutual or assessment plan, and is governed by the statutes pertaining to such corporations as set forth in § 6016-6018½ of C. & M. Digest.

In the case of *Springfield Mutual Assn.* v. *Atnip,* 169 Ark. 968, 279 S. W. 15, the policies were similar in all essential particulars to the policies in this action. The association in that case set up that it was not liable on the policies because they were mutual benefit certificates on the assessment plan. Among other things we said:

"It is not pretended that the appellant is not doing a life insurance business in this State. Its only contention is that it is doing an insurance business on the assessment plan. But that does not make it any the less a life insurance association doing a life insurance business in this State. The contracts it issues are life insurance contracts, and such companies come within the purview of the statute applying to all insurance companies unless they are expressly exempted by the later statute, as shown by the decisions *supra.* See also *Sovereign Camp W. O. W.* v. *Newsom,* 142 Ark. 132, where we held in effect that insurance certificates issued by benefit societies to their members must be regarded the same as any other ordinary policy or contract of insurance, so far as relates to the construction and enforcement of such contracts."

The case of *Southern Mutual Life Assn.* v. *Cocherell,* 166 Ark. 202-204, 265 S. W. 595, was likewise a case where the policy was similar to these now under review, and the action was against the company and the three individuals

who signed its bond filed with the Insurance Commissioner of the State in accordance with the statute. In that case we said: "The appellant is a life insurance company conducted on the mutual or assessment plan." According to the above and many other cases of our court, insurance companies conducting a business of life insurance on the mutual or assessment plan are treated precisely as any other life insurance company, so far as the construction of its contracts is concerned. If the appellant has violated its contracts in these cases, it is liable in damages, under the terms of the contracts, to the parties in interest at the time such violation of contracts occurred."

This brings us to the issue as to whether or not the appellant violated the contract of insurance. These contracts provided that, when the assured became a member or policyholder of the association, he should pay an initial assessment, which thereafter should increase and be payable at the rate of one cent per month during the membership until the 78th month from the date of the policy, when the maximum assessment would be reached. The policyholders in the association had been members more than 78 months and were paying their assessments or premiums according to the maximum rates, which, in one case, was $1.32, in another $1.25, and in another $1.11. On March 1, 1925, the appellant, by letter, notified the policyholders that its board of directors had decided that it was necessary, in order to comply with the law, to raise the assessment of policyholders, and that it therefore proceeded to raise the assessment of one of these policyholders from $1.32 to $6, and the other policyholders were likewise raised to an amount which exceeded the maximum rates fixed by the policies. The policyholders refused to pay this increased sum, and these actions resulted by the policyholders and beneficiaries against the appellant for a violation of the insurance contracts. The testimony of the appellant's secretary shows that the appellant attempted to justify this raise in the assessments on the ground that the Legislature had conferred upon assessment benefit associations the power to increase

the assessment of their members by act No. 139 of the Acts of 1925 and by authority of § 5 of the by-laws of the association. Act No. 139, *supra,* confers upon assessment benefit associations the power to provide for the calling for extra, increased, or additional assessments, or the readjustment of rates and benefits when the assessments and contributions from its members proved to be inadequate to meet all claims and expenses. Section 5 of the by-laws provides, in part, as follows: ''The revenue of this association shall be derived from a policy or incidental fee, the amount of which shall be fixed by the board of directors, and may be raised or lowered at any time as necessity may require. This fee shall be paid when the application is made for membership, and shall be used in defraying expenses incurred in the completion of a company in this association.''

A mere glance at this section shows that it has no reference whatever to the assessments or premiums which the members had to pay in order to keep alive the policies of insurance. There is no provision in the policy or in the by-laws of the association which binds the policyholder to any by-laws of the association that might thereafter be adopted or any rules or regulations that it might become necessary for the association to adopt thereafter in order to conform to any future laws enacted for the government of mutual assessment benefit associations. Therefore it is manifest that the appellant had no authority, under the contract and by-laws of the association in existence at the time the policies in controversy were issued, and the laws governing assessment associations at that time, to increase the premium rates beyond those specified in the contracts of insurance. In doing so the appellant violated its contract.

But learned counsel for the appellant contends that, under the terms of the policy, neither the policyholders nor the beneficiaries can maintain this action. They ground their argument upon the following provisions contained in the certificates or policies: ''In the event of the death of the beneficiary prior to the death of the

within named member, the benefits accruing by virtue of this policy shall be paid to the legal representative of the within named member." Counsel assert that this provision means that "in no event shall a member be paid anything, and therefore the member cannot sue, and there can be no way to ascertain that the beneficiary named in the certificate will outlive the member." The above provision was only intended to define the rights of policyholders in the event of the death of beneficiaries prior to the death of members in policies that were in force at the time of the death of the beneficiary, and in policies that remained in force until the death of the member. This provision has no reference whatever to the rights accruing to policyholders or beneficiaries in policies that had been violated and thus repudiated by the association prior to the death of the beneficiary and the death of the policyholder.

In 14 R. C. L., at page 1014, § 193, it is said:

"There is authority to the effect that, where a life insurance company has wrongfully declared a forfeiture of a policy issued by it, the insured cannot maintain an action at law to recover damages for breach of the contract, as the policy is still in force, and the insured has no right to sue for damages before the arrival of the time for performance by the insurer, his only remedy being a suit in equity to compel the insurer to recognize the contract. The better rule, however, seems to be that an action will lie for damages for the wrongful repudiation of an insurance contract, the cause of action residing in the beneficiary where he has a vested interest in the policy, but, where he has no vested interest, he cannot sue for a repudiation. * * * The damages recoverable for the wrongful repudiation of a life policy have been held by some courts to be the amount of premiums paid, while others add interest to that amount. The doctrine that the premium paid is the measure of damages is repudiated by other courts. One view is that, on a wrongful repudiation, the insured may do one of three things: (1), he may elect to consider the policy at an end, and recover its just

value; (2), he may sue in equity to have the policy declared in force; (3), he may tender the premiums and treat the policy as in force, and recover the amount payable on it at maturity. That the beneficiary may recover the just value of the policy seems to be a proper view, and the just value ordinarily may be ascertained by reference to the mortality tables.'' Cases are cited in note as supporting the varying views expressed in the text.

In note to *Merrick* v. *Ins. Co.,* 124 Wis. 221, 102 N. W. 593, 109 A. S. R. 931, it is said: ''The remedies which may be pursued against a life insurance company, when it wrongfully repudiates its contract of insurance, are disclosed in *Metropolitan Life Ins. Co.* v. *McCormick,* 19 Ind. App. 49, and several other cases.''

The case is one of first impression in our State, and, from the contrariety of view expressed by the various courts, we are at liberty to adopt what seems to us to be the best rule. The provision in the policy last above quoted, making the benefits under the policies, in case of death of the beneficiary prior to the death of the assured, payable to the legal representatives of the assured, shows conclusively that the beneficiaries in policies containing such a provision do not have a vested interest which is absolute and unrestricted. The assured could change the beneficiary, and might do so. The beneficiary might die before the assured. There is a provision in the by-laws to the effect that no assessment for death benefits shall be made upon any member or policyholder of this association for the benefit of the beneficiaries of any member and policyholder who is not, at the time of his death, a member and policyholder in good standing with the particular company to which the assessed member belongs. There are other provisions in the by-laws making it the duty of the officers of the association to fill up any vacancies that may occur in any company of the association from new members and policyholders before another company shall be started or completed. It was the duty of the appellant's managing board to maintain the membership in each company to the

maximum number of one thousand. This was manifestly for the purpose of enabling the association, under the terms of its contract, to pay, in the event of the death of the assured, the maximum sum of $1,000 specified therein when the premiums had reached their maximum rate.

But the testimony shows that the companies were not kept up to the maximum number, and, even where the maximum number is maintained, the entire membership in such company, when assessments are called, may not respond with their payments. Therefore the amount to be paid under the terms of the policy, in the event of the death of the assured, cannot be definitely ascertained until there has been an assessment of the members of the circle or company to which the policyholder belonged and the payment by the members of such assessment has been made. In the case of the repudiation of such policies by the association before the death of the assured, the amount of its then present value would be still more indefinite and uncertain. Indeed, it would be impossible to determine with any accuracy the then cash value of such policies to the beneficiaries.

A consideration of all these contingencies has brought us to the conclusion that the beneficiaries in policies like those under review have no cause of action. The Supreme Court of Wisconsin, in *Slocum* v. *N. W. Nat. Life Ins. Co.*, which was a mutual relief association, 14 L. R. A. (N. S.) 1110, 115 N. W. 796, concerning the right of beneficiaries to maintain such actions, used the following language: "The uncertainty of the beneficiary's interests, growing out of the contingencies incident to the power of the insured to thus deal with the policy, renders the rights and interests of the beneficiaries too hypothetical to be made the ground for damages for a breach of the contract. It is a mere expectancy of an unascertainable value, and hence cannot be made the basis of a claim for damages."

But the court in that case also said: "Under the law of this State, the rights of the insured in such a contract are valuable property rights, and for a deprivation

thereof the insured is entitled to recover the damages as for other wrongful deprivations of valuable property rights." As we have already observed, there is nothing in these contracts of insurance to differentiate them in principle from contracts of insurance in old-line insurance companies, so far as liability for violation of the contracts is concerned. Insurance contracts come under the general doctrine applicable to all executory contracts, as declared by the Supreme Court of the United States through Mr. Justice Bradley in *Lovell* v. *St. Louis Mutual Life Ins. Co.*, 111 U. S. 264, as follows: "When one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated, and demand whatever damages he has sustained thereby." See *Merrick* v. *Ins. Co., supra,* at page 932, on this point, and cases there cited. *Morton* v. *Supreme Council of Loyal League*, 100 Mo. App. 76, 73 S. W. 259; *Commonwealth* v. *Weatherbee,* 105 Mass. 149; *Supreme Council A. L. J.* v. *Daix,* 130 Fed. 101.

The case of *Mutual Reserve Fund L. Assn.* v. *Ferrenback,* 144 Fed. 342, 7 L. R. A. 1163, is one most thoroughly considered and exhaustively treated in the opinion. In that case the Circuit Court of Appeals, speaking through Judge Hook, holds that the assured had the right to maintain the action, and lays down two rules for the measure of damages, approving one of them, and cites many authorities. See in the opinion and foot-notes to case. We do not decide which of these rules for the measure of damages is proper under the peculiar facts of this record, because the amounts of the respective judgments have not been challenged by appellants. No issue has been raised or argued by counsel for appellants as to the rule for the measure of damages in such cases. Counsel for appellants have only insisted that the actions are premature, and that there is no liability on the bond.

It follows therefore that those of the appellees who were the policyholders had the right to maintain these

actions, and that the actions were not premature, since the appellant had violated and repudiated its contract with the appellees.

2. We come next to the contention that the appellants, W. T. Roberts, John P. Roberts and Chas. X. Williams, are not liable as bondsmen of the association. In this contention the appellants are correct. The bond is only a fidelity bond, given under § 6016 of Crawford & Moses' Digest, and was "conditioned for the prompt payment of all assessments to the parties or beneficiaries entitled thereto, and that the makers of such bond shall be liable thereon for any violation of the conditions thereof for any loss which may accrue to the policyholders or beneficiaries of such company."

This court, in *Ingle* v. *Batesville Grocery Co.*, 89 Ark. 378, held that the sureties on such bond are bound merely to see that the insurance company pays over all assessments to the parties or beneficiaries entitled thereto. Learned counsel for appellees ask that we reconsider and overrule that case. We decline to do so, for the reason that it was a thoroughly considered case, and we believe that the opinion of Mr. Special Justice BLACKWOOD, speaking for the majority of the court, states the correct doctrine applicable to such bonds. We therefore adhere to that decision.

The judgments are therefore affirmed except as against the appellants, W. T. Roberts, John P. Roberts and Chas. X. Williams, as bondsmen of the association. The judgments against them as such bondsmen are reversed and dismissed.

### OPINION ON REHEARING.

WOOD, J. In the original opinion we said: "We do not decide which of these rules for the measure of damages is proper under the peculiar facts of this record, because the amounts of the respective judgments have not been challenged by the appellants. No issue has been raised or argued by counsel for appellants as to the rule for the measure of damages in such cases. Counsel for

appellants have only insisted that the actions are premature, and that there is no liability on the bond.''

Counsel for appellants insist, on rehearing, that the issue as to the amount of recovery was necessarily raised by their allegations in the motion to dismiss the complaints, and also in their answer to the effect that they were not indebted to the appellees in any amount. We have concluded, on reconsideration, that we erred in holding that the issue as to the rule for the measure of damages was not raised. The contention of appellant, that the actions were premature and therefore that there was nothing due on the policies, necessarily raises the issue as to whether or not there can be a recovery on the policies in these actions, and, if so, what the amount of that recovery should be. It occurs to us therefore, upon a reconsideration of our original opinion, that it is proper to declare the rule for the measure of damages in such cases. As pointed out in the original opinion, because of the impossibility of determining with any accuracy the present cash value of the policies based upon the mortality tables, the only correct rule for the measure of damages growing out of a breach of such contract of insurance, where the assured elects to treat the contract as rescinded, is that announced in *Supreme Council A. L. H.* v. *Black,* 123 Fed. 650-653, as follows: ''According to the clear weight of authority, if an insurance company wrongfully cancels a policy or otherwise wrongfully renounces the contract, the insured may, at his election, treat the contract as rescinded, and recover back all the premiums he has paid.'' It should be added that the insured in such cases is entitled to recovery of the premiums, with interest thereon at the legal rate, from the day of each payment until the date of the repudiation of the contract by the association refusing to accept the premiums which were actually due under the contract. Authorities to support this view are cited in the above case and in the case of *Mutual Reserve Fund Life Association* v. *Ferrenbach,* 144 Fed. 342, at page 344. See also 1 Bacon on Life and Accident Insurance, vol. 1, page 746, § 361.

The *rationale* of the rule finds expression in *Union Central Life Ins. Co. v. Pottker,* 33 Ohio St. Rep. 459, 31 Am. Rep. 555, as follows, quoting syllabus: "If, in such case, the company wrongfully declares the policy forfeited, and refuses to accept the premium when duly tendered, and to give the insured the customary renewal receipt evidencing the continued life of the policy, the assured is, in equity, entitled to demand a rescission of the contract and a return of the premiums paid thereon, with interest from the times of payment."

While the cases at bar are cases at law for damages, treating the contracts as rescinded, that can make no difference as to the above being the correct rule for the measure of damages growing out of breach of contract on the part of the association by refusing to accept premiums legally due thereunder and thus repudiating the contracts and treating the same as forfeited.

There is nothing in the record to show what rule was adopted by the trial court in ascertaining the measure of damages, and appellants do not bring into the record any testimony tending to prove that the amount of the judgments rendered by the trial court were excessive under the rule above announced. Indeed, the appellants, in their motions for a new trial, do not assign as error that the judgments of the court were excessive. The appellants did not, in the lower court, nor did they argue in their original brief, that the judgments of the trial court were excessive in amounts. They have, for the first time, in their briefs on motion for rehearing, argued that the court erred in the amount of the judgments, but they do not point out and demonstrate from the record wherein the judgments are excessive under the correct rule for measuring damages in such cases as above declared. Therefore the appellants do not show wherein the court erred in fixing the amounts of the several judgments.

For the reasons expressed in the original opinion we hold that the appellees had a cause of action against the appellants and that the actions were not prematurely instituted. The motion for rehearing is therefore denied.