**PROTECTIVE MUT. LIFE INS. ASS'N**
**v. DUKE et ux.**
**No. 4825.**

Court of Civil Appeals of Texas. Texarkana.

Jan. 9, 1936.

Keeney & Moseley, of Texarkana, and L. O. Meadows, of De Kalb, for appellant.

O. B. Pirkey, of New Boston, for appellees.

SELLERS, Justice.

This suit was filed in the district court of Bowie county by Jim Duke and his wife, Essie Pearl Duke, against the Protective Mutual Life Insurance Association to recover damages for the illegal cancellation of a certain insurance certificate issued by the defendant upon the life of Mrs. Jim Duke. The certificate is for a sum of not exceeding $1,000, which is to be raised by assessments of $1 each upon members of a certain class.

Plaintiffs alleged that the certificate of Mrs. Duke was in full force and effect on May 5, 1932, when assessments Nos. 77 and 78 were made against her, and that such assessments were paid in the time allowed by defendant. Plaintiffs further alleged that notwithstanding the payment of such assessments, defendant unlawfully and without authority or excuse on or about May 25, 1932, canceled said certificate of insurance and from said date has refused to acknowledge her membership in said association; that plaintiffs continued to tender further assessments made by defendant, but such funds were returned to them with instructions not to send in further payments; that she, Mrs. Duke, was no longer a member and was not entitled to benefits to be derived from such membership; and because of her ill health defendant would not reinstate her. It was further alleged that plaintiff Jim Duke is the beneficiary named in the certificate; that Mrs. Duke at the time such certificate was canceled was in bad health and has continued to be in bad health and will never recover her health; that because of her condition her life expectancy is not in excess of five years. It is further alleged:

"That to have kept said certificate of insurance in full force to the time of her death, the plaintiff Mrs. Jim Duke would have had to pay such assessments as would be made against her to pay dues and death

claims, which she says would not have been more than $50.00, and at her death her husband, Jim Duke, would have been entitled to collect $1000.00, as provided in said certificate, or an assessment of $1.00 to be made against each member in good standing, not to be over $1,000.00, and which plaintiffs say would have amounted to $1,000.00.

"Plaintiffs further say, after deductions to all assessments that would have been made during the life of the plaintiff Mrs. Jim Duke, to keep said insurance certificate in full force to her death, and after subtracting from said sum of $1,000.00 a proper amount for advance payment, there would be due the sum of $800.00.

"Plaintiffs say that the cancellation of the certificate so held by the plaintiff Mrs. Jim Duke, as alleged, was without just or legal cause. That same was cancelled while she was sick and confined to bed with little prospects for recovery, and was carelessly and negligently cancelled, or willfully and purposely done for the purpose of defeating plaintiffs' rights thereunder.

"Plaintiffs say, because of the wrongful cancellation of said insurance certificate and its failure and refusal to reinstate plaintiff Mrs. Jim Duke as a member in good standing in said association and because of the facts above alleged, plaintiffs have been damaged in the full sum of Eight Hundred ($800.00) Dollars.

"Wherefore, premises considered, plaintiffs pray that the defendant be cited to appear and answer herein and that on final hearing hereof they have judgment for their damages in the sum of $800.00, for costs of suit and for such other and further judgments, orders and decrees to which they are entitled either in law or in equity, for all of which they will ever pray."

The defendant answered by plea in abatement, general demurrer, certain special exceptions, general denial, and specially alleged, among other allegations, that Mrs. Jim Duke was in bad health and could not be reinstated because of her health.

The case was tried to a jury, which made the following findings:

Question 1: "Do you find from a preponderance of the evidence that plaintiffs paid death assessments Numbers 77 and 78 promptly?" Answer: "Yes."

Question 2: "Do you find from a preponderance of the evidence that plaintiffs elected to sue defendant for their damages before an unconditional offer was made by defendant to reinstate Mrs. Duke?" Answer: "Yes."

Question 3: "What do you find from a preponderance of the evidence is the length of the expectancy of life of Mrs. Duke, from the date of her suspension to the end of her expectance?" Answer: "Four Years."

Question 4: "What sum of money, if any, do you find from a preponderance of the evidence would it take to pay all assessments and dues on the insurance certificate involved in this suit from the date of suspension of Mrs. Duke to the end of her expectancy of life? Answer in dollars and cents." Answer: "$78.00."

Upon the jury's findings, the court on April 19, 1934, entered judgment for the plaintiffs for the sum of $800, from which judgment the defendant has appealed.

■ It is the contention of appellant that the evidence offered by appellees to show that Mrs. Duke was in bad health at the time the policy was canceled was insufficient to establish such fact. We do not agree with the contention, however, since both parties to this cause have pleaded the bad health of Mrs. Duke at the time the policy was canceled. There was no necessity for the introduction of evidence on this issue, since the prevailing rule in this state is that what has been alleged by both parties will be accepted as establishing the fact in respect of which the allegation is made. Wilson v. Beck (Tex.Civ.App.) 286 S.W. 315.

■ Appellant makes the point that, since it was honestly mistaken in its contention that Mrs. Duke had not paid her dues for which her policy was canceled, and that since appellant has unconditionally offered to reinstate the insurance certificate, appellees were not entitled to recover herein. The law seems to be settled that where the society wrongfully cancels or repudiates a contract of mutual life insurance, the member may treat the contract as terminated and maintain an action at law for damages for wrongful cancellation or repudiation. Grand Lodge, Brotherhood of Railroad Trainmen v. Martin (Tex.Civ. App.) 218 S.W. 40; Supreme Lodge, K. of P. v. Neeley (Tex.Civ.App.) 135 S.W. 1046; Royal Fraternal Union v. Lunday, 51 Tex.Civ.App. 637, 113 S.W. 185.

Another proposition presented in appellant's brief is to the effect that since appellant is a local mutual aid association with no funds to pay any judgment which might be rendered against it, the court should not have rendered a judgment in favor of appellees. The fact that appellant has no funds on hand with which to pay any judgment which might be rendered against it is no defense to appellees' cause of action. Fort v. Iowa Legion of Honor, 146 Iowa, 183, 123 N.W. 224. Nor do we find any provision in the statute authorizing local mutual aid associations which will prohibit assessment upon such association's members to pay damages against it occasioned by wrongful cancellation of a member's certificate. The liability of a mutual aid association for damages for the wrongful cancellation of a member's certificate was before the Supreme Court of Arkansas in the case of Mutual Relief Association v. Ray, 173 Ark. 9, 292 S.W. 396, 399, and it was there held: "According to the above and many other cases of our court, insurance companies conducting a business of life insurance on the mutual or assessment plan are treated precisely as any other life insurance company so far as the construction of its contracts are concerned. If the appellant has violated its contracts in these cases, it is liable in damages under the terms of the contracts to the parties in interest at the time such violation of contracts occurred."

By proper assignment of error, appellant contends that the judgment is excessive, and this calls for a determination of what is the proper measure of damages in such cases. The rule adopted for determining the measure of damages in this state for the wrongful cancellation of an insurance certificate where the insured has elected to sue for damages for wrongful breach of the contract is the value of the contract or policy at the time of the wrongful cancellation. Supreme Lodge, K. of P. v. Neeley, supra; Provident Savings Life Assurance Society v. Ellinger (Tex. Civ.App.) 164 S.W. 1024; St. Louis S. W. R. Co. v. Thompson, 102 Tex. 89, 113 S.W. 144, 19 Ann.Cas. 1250; Mutual Reserve Fund Life Ass'n v. Ferrenbach (C.C.A.) 144 F. 342, 345, 7 L.R.A.(N.S.) 1163; Ebert v. Mutual Reserve Fund Life Ass'n, 81 Minn. 116, 83 N.W. 506, 834, 84 N.W. 457; American Ins. Union v. Woodard, 118 Okl. 248, 247 P. 398, 401, 48 A.L.R. 102; and the more recent case of Grand Fraternity v. Nicosia (Tex.Civ.App.) 41 S.W.(2d) 684, 685, where the cases first cited were followed.

There is a case in this state, Washington Life Ins. Co. et al. v. Lovejoy et al. (Tex.Civ.App.) 149 S.W. 398, which holds that the measure of damage for the wrongful cancellation of an insurance contract where the insured is at the time no longer an insurable risk is the amount of the premiums paid by the insured together with 6 per cent. interest from the several respective dates of payment. We think the fallacy of the reason given for this rule is thoroughly demonstrated in the case of Mutual Reserve Fund Life Ass'n v. Ferrenbach, supra, quoting: "There are several reasons which we think demonstrate that the rule of the above cases is inadmissible, bearing in mind that the end desired is compensation to the insured for loss sustained and not the punishment of the company. Under some circumstances such a rule would work great injustice to the insured, and under others great injustice to the insurer. An example of the former would be presented, if the insured, having paid but one year's premium upon a policy issued for his entire life, should become so affected with disease that he could not procure insurance elsewhere. It would be manifestly unjust to restrict his recovery for a wrongful cancellation of his policy to the amount of the single premium paid. On the other hand, if a policy upon the assessment plan has endured for many years, the assessments or premiums might, with interest, aggregate a sum largely in excess of the principal sum of the policy."

We are of the opinion that there should be no distinction between the measure of damages for the wrongful cancellation of a policy of insurance when the insured is no longer an insurable risk than there is when he is in good health and physically able to secure other insurance. The difference, it seems, between the rights of the one whose policy was wrongfully canceled when he was in good health and one whose health is bad at the time of cancellation does not lie in the legal measure of damages, but in the method of arriving at the true value of the policy on the date of its cancellation. The methods used in arriving at such values are as varied as the character of policies of life insurance vary, but if the Supreme Court of this state should adhere to the rule announced in the Lovejoy Case, supra, still it should not control the case under consideration for the reason that the contract of insurance here

being considered is that of a mutual benefit association whose certificate covers only death benefits which are raised by assessment upon the members of the association; and it seems to be the universal rule in suits for damages for wrongful cancellation of such insurance the measure of damages is the value of the policy at the time the policy is canceled. Mutual Reserve Fund Life Ass'n v. Ferrenbach, supra; American Ins. Union v. Woodard, supra. The method of arriving at the value of such a polciy when the insured is no longer an insurable risk is best stated in the last-cited case: "The damage is determined by ascertaining the total premiums that would be required to carry the contract during the plaintiff's life expectancy, from the time of the breach of the contract, and deducting the amount thereof from the face of the policy. However, the plaintiff is entitled to a credit for interest on the total amount of premiums for a period of time equal to the life expectancy of the assured. A further sum of money equal to the interest on the face of the policy, after deducting the premiums, for a period of time equal to the plaintiff's life expectancy, should be deducted from the remainder of the face of the policy. After making the two deductions from the face of the policy, as set forth, and giving the plaintiff the credit referred to, the remainder will be the present value of the policy, and is the damage that plaintiff suffered by reason of the breach of the contract."

When the value of the policy involved is figured by the above rule, it will be found that the value on the date of cancellation was $715.06, with interest on this amount to the date of judgment at 6 per cent. per annum would be $796.57, the maximum amount of judgment the appellees were entitled to.

The judgment will therefore be reversed and the cause remanded, unless the appellees should tender into this court within thirty days a remittitur for the difference between $796.57, the amount for which the judgment should have been entered, and the sum of $800, the amount of the judgment, in which event the judgment, as so reduced, will be affirmed at cost of appellant under the rule announced in the case of Missouri, K. & T. R. Co. of Tex. v. Davidson, 25 Tex.Civ.App. 134, 60 S.W. 278.